J-A16032-21

2021 PA Super 178

| CENTRIC BANK | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL SCIORE AND MARIE ANGIE | : | |
| HERNANDEZ-SCIORE | : | |
| | : | No. 1376 MDA 2020 |
| Appellants | : | |

Appeal from the Order Entered September 30, 2020
In the Court of Common Pleas of Schuylkill County Civil Division at
No(s): J-1632-2020

| CENTRIC BANK | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EAGLE ROCK GREEN ENERGY, LLC | : | |
| | : | |
| Appellant | : | No. 1410 MDA 2020 |

Appeal from the Order Entered September 30, 2020
In the Court of Common Pleas of Schuylkill County Civil Division at
No(s): J-1633-2020

BEFORE:   KUNSELMAN, J., McCAFFERY, J., and STEVENS, P.J.E.*

OPINION BY STEVENS, P.J.E.:          **FILED SEPTEMBER 03, 2021**

Appellants, Michael Sciore and Mari Angie Hernandez-Sciore ("the

Sciores"), and Eagle Rock Green Energy, LLC ("Eagle Rock"), appeal from the

orders entered in the Court of Common Pleas of Schuylkill County denying

_____

* Former Justice specially assigned to the Superior Court.

their petitions to strike and/or open a confessed judgment in favor of Appellee

Centric Bank ("Appellee").[1]  After a careful review, we affirm.

The relevant facts and procedural history have been set forth, in part,

by the trial court as follows:

> [On or about May 26, 2020, Appellee filed a Complaint in Confession of Judgment against the Sciores alleging that Appellee made a $250,000.00 commercial loan to the Sciores, to which Eagle Rock was a Guarantor, and that the Sciores defaulted on the loan when they failed to make payments for March, April, and May of 2020.] Appellee [also filed] a Complaint in Confession of Judgment against [Eagle Rock[2]] on or about May 26, 2020, in which Appellee alleged that [Eagle Rock] agreed to be a Guarantor on its commercial loan to [the Sciores], and that [Eagle Rock] signed a Commercial Guaranty Agreement dated December 19, 2014 (the "Guaranty").  [Appellee averred that Eagle Rock] was in default of its obligations under the Guaranty for failing to cure the [Sciores'] default.
>
> Appellee attached the December 19, 2014, Promissory Note ("the Note") as an exhibit to the Complaints, which contained authorization for the confession of judgment, as well as a disclosure for confession of judgment, that was signed by the [Sciores].  Appellee also attached the Guaranty as an exhibit to the Complaints.  Thereafter, judgment was entered against [Eagle Rock and the Sciores] in the amount of $277,429.26, which included attorneys' fees that equated to 10% of the total outstanding remaining balance of the loan principal plus accrued interest.  On or about June 2, 2020, [Eagle Rock and the Sciores were] served with the Complaints.  [They] filed Petitions to Strike

---

[1] The order entered against the Sciores is docketed at lower court number J-1632-2020, and the order entered against Eagle Rock is docketed at lower court number J-1633-2020.

[2] Eagle Rock is a limited liability company ("LLC"), which was formed solely to hold legal title to the Sciores' vacation home in Schuylkill County, Pennsylvania, and it does not operate or engage in any business.  Mr. Sciore is the sole member of Eagle Rock.

Off or Open Judgments on or about June 30, 2020. Appellee filed its Answers on or about July 17, 2020.

The parties engaged in three depositions.[2] On or about August 12, 2020, the parties deposed Mr. Sciore and Mrs. Sciore.

---

2 The parties agreed to use the same exhibits and depositions for both [the case against Eagle Rock] and [the case against the Sciores.]

---

Donald Joseph Bonafede, a commercial loan officer for Appellee, was deposed on or about August 13, 2020. During the depositions, the parties agreed to jointly submit seventeen exhibits. The exhibits were submitted to [the trial] court on September 10, 2020, when the court scheduled oral argument on [Eagle Rock's and the Sciores'] Petitions to Strike or Open Confessed Judgment. [The trial] court entered an Order on September 30, 2020, that denied [Eagle Rock's and the Sciores'] Petitions and held that [they] failed to show any basis for [striking or] opening the judgment. On or about October 26, 2020, [Eagle Rock and the Sciores] filed [separate] Notices of Appeal.[3] An Order was entered by [the trial] court on November 10, 2020, directing [Eagle Rock and the Sciores] to concisely set forth the matters complained of on appeal pursuant to Pa.R.[A].P. 1925. On or about December 1, 2020, [they] filed a Statement of Errors Complained of on Appeal Pursuant to Pa.R.A.P. 1925(b). [On December 23, 2020, the trial court filed responsive Rule 1925(a) opinions.[4]]

Trial Court Opinion, filed 12/23/20, at 1-3 (some footnotes omitted) (footnotes added).

On appeal, Eagle Rock and the Sciores (collectively "Appellants") have filed a single brief in which they present the following issues in their "Statement of Questions Involved" (verbatim):

---

3 This Court subsequently consolidated the appeals.

4 We note the trial court's Rule 1925(a) opinions for each lower court docket number are nearly identical; however, where necessary, we have specified precisely to which opinion we are referring.

- 3 -

1. Whether the trial court erred and abused its discretion in denying Appellants' petitions to strike and/or open the confessed judgment for violating Pa.R.C.P. 2950, which prohibits the use of a warrant of attorney to confess judgment in a consumer credit transaction?

2. Whether the trial court abused its discretion in denying the petitions to open the confessed judgment on the basis that the warrant of attorney to confess judgment is a contract of adhesion and is otherwise unconscionable under the circumstances in which the loan was made to an unsophisticated borrower, Mari Angie Hernandez-Sciore?

3. Whether the trial court abused its discretion in failing to strike, open or reduce the amount of the judgment because the attorneys' fees of 10% of the principal balance of the loan included in the confessed judgment is excessive and unreasonable?

4. Whether the trial court abused its discretion in denying Appellants' petitions to open the confessed judgment when there was a dispute concerning whether the loan was in default and the accuracy of the amount due after Centric Bank applied monies the bank advanced from another borrower's line of credit and held as collateral to the loan at issue?

5. Whether the trial court abused its discretion in denying Appellants' petitions to open the confessed judgment when the totality of the circumstances gave rise to meritorious defenses?

Appellants' Brief at 8-9.

In reviewing Appellants' issues, we keep in mind the following well-established legal precepts.

> "A petition to strike a judgment is a common law proceeding which operates as a demurrer to the record. A petition to strike a judgment may be granted only for a fatal defect or irregularity appearing on the face of the record." *Resolution Trust Corp. v. Copley Qu–Wayne Associates*, 546 Pa. 98, 683 A.2d 269, 273 (1996).
>
> > In considering the merits of a petition to strike, the court will be limited to a review of only the record as filed by the party in whose favor the warrant is given,

> *i.e.,* the complaint and the documents which contain confession of judgment clauses.  Matters *dehors* the record filed by the party in whose favor the warrant is given will not be considered.  If the record is self-sustaining, the judgment will not be stricken....An order of the court striking a judgment annuls the original judgment and the parties are left as if no judgment had been entered.

**Hazer v. Zabala**, 26 A.3d 1166, 1169 (Pa.Super. 2011) (quoting **Resolution Trust Corp.**, **supra**).  In other words, the petition to strike a confessed judgment must focus on any defects or irregularities appearing on the face of the record, as filed by the party in whose favor the warrant was given, which affect the validity of the judgment and entitle the petitioner to relief as a matter of law.  [T]he record must be sufficient to sustain the judgment.  The original record that is subject to review in a motion to strike a confessed judgment consists of the complaint in confession of judgment and the attached exhibits.  **Resolution Trust Corp.**, **supra**.

> In contrast, "if the truth of the factual averments contained in [the complaint in confession of judgment and attached exhibits] are disputed, then the remedy is by proceeding to open the judgment," not to strike it.  **Id.** at 106, 683 A.2d at 273.

> A petition to strike a confessed judgment and a petition to open a confessed judgment are distinct remedies; they are not interchangeable.  **Hazer**, **supra**.  A petition to open a confessed judgment is an appeal to the equitable powers of the court.  Factual disputes by definition cannot be raised or addressed in a petition to strike off a confession of judgment, because factual disputes force the court to rely on matters outside the relevant record to decide the merits of the petition.

**Neducsin v. Caplan**, 121 A.3d 498, 504-05 (Pa.Super. 2015) (citations, quotation, and quotation marks omitted). Thus, we review the order denying a petition to open the confessed judgment for an abuse of discretion.  **PNC Bank v. Kerr**, 802 A.2d 634, 638 (Pa.Super.  2002).

Further, "[a] judgment by confession will be opened if the petitioner acts promptly, alleges a meritorious defense, and presents sufficient evidence in support of the defense to require the submission of the issues to a jury." *Ferrick v. Bianchini*, 69 A.3d 642, 647 (Pa.Super. 2013). "A meritorious defense is one upon which relief could be afforded if proven at trial." *Id.*

> When determining a petition to open a judgment, matters *dehors* the record filed by the party in whose favor the warrant is given, *i.e.*, testimony, depositions, admissions, and other evidence, may be considered by the court. An order of the court opening a judgment does not impair the lien of the judgment or any execution issued on it.

*Id.* (quotation omitted).

In their first issue, Appellants contend the trial court erred in denying their petitions to strike and/or open the confessed judgment since Appellee violated Pa.R.C.P. 2950, which prohibits the use of a confession of judgment in a consumer transaction.[5] Specifically, Appellants assert the trial court erred in concluding the loan at issue was a commercial loan, as opposed to a consumer loan.

Pa.R.C.P. 2950 precludes judgment by confession in any "action" involving a consumer credit transaction. Specifically, Rule 2950 provides:

> As in this chapter 'action' means a proceeding to enter a judgment by confession for money pursuant to an instrument, other than an

---

[5] Confessions of judgment for money are governed by Rules 2950 through 2967 of the Pennsylvania Rules of Civil Procedure.

instrument executed by a natural person in connection with a consumer credit transaction, authorizing such confession.[6]

Pa.R.C.P. 2950 (footnote added). A "consumer credit transaction" is defined as "a credit transaction in which the party to whom credit is offered or extended is a natural person and the money, property or services which are the subject of the transaction are primarily for personal, family or household purposes." *Id.*

In finding that the loan was a not a consumer credit transaction within the meaning of Pa.R.C.P. 2950, and thus, Appellants failed to demonstrate their entitlement to have the confessed judgment stricken and/or open on this basis, the trial court relevantly indicated the following:

> Appellant[s] assert that the deposition testimony established that the line of credit extended by Appellee to [the Sciores] was used by [the Sciores], with Appellee's knowledge, for their personal purposes, including to repay another loan secured by a mortgage on [the Sciores'] mountain home, and for their personal expenses, mortgage, and car payments. Appellant[s] allege that the loan was a consumer credit transaction, not a commercial loan, and that Appellee violated Pa.R.C.P. 2950 by using a warrant of attorney to confess judgment against the [Appellants].
>
> This Court finds that Appellant[s] [have] failed to demonstrate that a fatal defect or irregularity appears on the face of the record; therefore, Appellant[s] [are] not entitled to have judgment stricken. The loan documents clearly establish that the loan was to be used solely for business purposes, thus no violation of Pa.R.C.P. 2950 occurred. [Further, there is no basis to open

---

[6] The Official Note to the Rule provides that the "[t]he [confession of judgment] action is abolished insofar as it would apply to a confession of judgment which is part of an instrument executed in connection with a consumer credit transaction." Pa.R.C.P. 2950, Note.

the judgment]. The record reflects that Appellee was told by [Appellants] that the loan was to be used to advance [the Sciores'] business interests. This is evidenced by the Disbursement Request and Authorization that was signed by the [Sciores] as a part of the Note, which states that the specific purpose of the loan is to "[s]upport business and real estate investments." **See** Exhibits from the Deposition—Jointly Submitted by the Parties, Exhibit 11, September 10, 2020. Further, the [Sciores] each executed a Business Loan Agreement ("BLA") related to the Note, which stated on page 2, thereof, in a section entitled "Loan Proceeds," that the use of all loan proceeds were solely for [the Sciores'] business operations unless specifically consented to the contrary by Appellee in writing. **See** Exhibits from the Depositions—Jointly Submitted by the Parties, Exhibit 15, September 10, 2020. Additionally, the deposition testimony of Donald Bonafede, who was a commercial loan officer for [Appellee] at the time the loan was executed, indicates that the loan was a commercial loan, not a consumer credit transaction, because it was extended by [Appellee's] commercial loan department. Mr. Bonafede testified that he engaged only in commercial lending at [Appellee], as well as that it is Appellee's policy that its commercial loan department does not issue consumer loans. According to Mr. Bonafede, if an individual wants a consumer loan, they would be referred to one of the bank's branches instead of the commercial loan department. Deposition testimony by Mr. Bonafede also indicated that the proceeds of the loan had to be used for business purposes unless expressly authorized by the lender. In the instant matter, Appellant[s] [have] failed to produce evidence that Appellee authorized the use of the loan proceeds for purposes other than business.

[Nevertheless], Appellant[s] assert that discussion between the parties occurred prior to the execution of the loan documents, in which the [Sciores] notified Appellee that the proceeds would be used for personal purposes. However, the Parole [*sic*] Evidence Rule of Contract Law is clear that the final writing of a contract is controlling, and that any discussions between the parties that occurred before the final writing was executed, and which were not included in the final writing, do not become part of the contract. "[T]he purpose of the parole [*sic*] evidence rule is 'to preserve the integrity of the written agreements by refusing to permit the contracting parties to attempt to alter the import of their contract through the use of contemporaneous [or prior] oral declarations.'" **Rose v. Food Fair Stores, Inc.**, 262 A.2d 851, 853 (Pa. 1970). [In any event, regardless of discussions prior to

the loan, Mr. Bonafede testified the proceeds of the instant loan were used to pay off another commercial loan, which the Sciores received from a different bank, Mid Penn Bank. **See** Bonafede Deposition, 8/13/20, at 164.]

[The trial] court finds it did not err in denying Appellants' Petition to Strike Judgment because Appellant[s] failed to show that a fatal defect or irregularity appeared on the face of the record. Additionally, [the trial] court did not err in denying Appellants' Petition to Open Judgment because, even though Appellant[s] acted promptly in filing [their] petitions, Appellant[s] failed to allege a meritorious defense or to produce sufficient evidence that the loan was a consumer transaction, which would require the submission of the case to a jury. Even in viewing the evidence in the light most favorable to Appellant[s], and accepting as true all evidence and proper inferences supporting the defense alleged by Appellant[s], [the trial] court finds no valid defense. Based on the record, the Guaranty, and the other loan documents, it is clear that the loan was a commercial loan, not a consumer credit transaction. Therefore, no violation of Pa.R.C.P. 2950 occurred.

Trial Court Opinion, filed 12/23/20, at 4-8 (citation omitted).

We find no error or abuse of discretion in the trial court's analysis. Initially, there is no fatal defect or irregularity appearing on the face of the record so as to support striking the judgment under Pa.R.C.P. 2950. **See Neducsin**, **supra** (setting forth standard for striking a confession of judgment).

Further, the trial court did not abuse its discretion in finding that the money, which was the subject of the transaction, was a commercial credit transaction since the money was not primarily for personal, family, or household purposes as set forth in Pa.R.C.P. 2950. Thus, we agree Appellants failed to set forth sufficient evidence of a meritorious defense so as to open

the confessed judgment. **See Neducsin**, **supra** (setting forth standard for opening a confession of judgment). Accordingly, Appellants are not entitled to relief with regard to their first issue.

In their next issue, Appellants contend the trial court abused its discretion in denying the petitions to open since the warrant of attorney is a contract of adhesion and unconscionable. Specifically, they assert Appellants lacked a meaningful choice in accepting the provision, which unreasonably favored Appellee.

Moreover, Appellants contend Mrs. Sciore, who was an unsophisticated borrower, did not knowingly or voluntarily accept the warrant of attorney to confess judgment. In this vein, Appellants assert that "[g]iven the vast disparity that existed in the bargaining power between the parties and the pressure placed on Mrs. [Sciore] to execute the Note containing the warrant to get the Loan, whether Mrs. [Sciore] knowing[ly], voluntar[ily], or intelligent[ly] waived her due process rights was certainly in doubt." Appellants' Brief at 41.

Whether a contract is unconscionable is a matter of law. **Snyder v. Rogers**, 499 A.2d 1369, 1372 (Pa.Super. 1985). This Court has explained that unconscionability is a defensive contractual remedy that relieves a party from an unfair contract or an unfair portion of a contract. **Germantown Mfg. Co. v. Rawlinson**, 491 A.2d 138, 145-48 (Pa.Super. 1985). Further, in general, unconscionability has been recognized to include an absence of a

meaningful choice on the part of one of the parties together with contract terms that are unreasonably favorable to the other party. **See id.** "Unconscionability...[does] nothing more than reaffirm the most basic tenet of the law of contracts—that parties must be free to choose the terms to which they will be bound." **Id.** at 145-46.

In the context of a confession of judgment clause, emphasis is placed on the sophistication of the parties in determining whether a provision is unconscionable. **Id.** A party's signature to a contract is designed to evidence his or her intention to be bound by the contract's terms. **Petrie v. Haddock**, 119 A.2d 45 (Pa.Super. 1956).

However, agreements authorizing a confession of judgment require a clearer manifestation of consent than do some other types of contract provisions. **Scott v. 1523 Walnut Corp.**, 447 A.2d 951 (Pa.Super. 1982). The language contained in the agreement must be specific enough to demonstrate that the signing party has consented to the entry of the judgment by confession. **See Solebury Nat. Bank of New Hope v. Cairns**, 380 A.2d 1273 (Pa.Super. 1977) (*en banc*). The burden of establishing the unconscionable nature of a contract or contract provision clearly rests upon the party challenging the contract or term. **Denlinger, Inc. v. Dendler**, 608 A.2d 1061 (Pa.Super. 1992).

In the case *sub judice*, the trial court relevantly indicated the following:

> Direct and unambiguous language of a Confession of Judgment provision contained in a contract is strong evidence that

- 11 -

the signatories waived their notice and hearing rights knowingly, voluntarily, and intelligently. Further, an agreement which contains multiple direct references to the confession of judgment and waiver of due process rights, in bolded, capitalized letters, is evidence of a valid warrant of attorney.

[The trial court] finds that the Guaranty, the Mortgage and Security Agreement, and the other loan documents, are written documents that speak for themselves. Therefore, [Appellants] are bound by the loan documents that they executed.

The loan documents and the facts indicate that [Appellee] and [Appellants] agreed that the Sciores' vacation home in Schuylkill County, PA, would serve as a collateral for the loan. The deposition testimony of Mr. Bonafede indicates that Mr. Sciore sought out the loan with Appellee. Mr. Bonafede testified that, in his initial conversation with Mr. Sciore, Mr. Sciore requested a line of credit under his and his wife's name, and that he offered the Property as collateral for the loan. Mr. Bonafede also testified that, during that conversation, Mr. Sciore was notified that Appellee required financial information about the Property to have an appraisal performed. According to Mr. Bonafede, Appellee discovered that legal title to the Property was held by [Eagle Rock] only after Mr. Sciore submitted the requested financial information. Mr. Bonafede testified that the Guaranty from [Eagle Rock] was then required by Appellee because [Eagle Rock], and not the [Sciores], held legal title to the Property that Mr. Sciore was offering as collateral.

The record and facts also indicate that the Guaranty, which was signed by Mr. Sciore on behalf of [Eagle Rock], expressly states that the Guaranty was given in exchange for "good and valuable consideration." Additionally, the Mortgage and Security Agreement, which was signed by Appellants, indicates that the mortgage was entered into for "valuable consideration." As already explained above, [Eagle Rock] is an LLC that was formed solely to hold legal title to the [Sciores'] Property, and it does not operate or engage in any business. The sole member of [Eagle Rock] is Mr. Sciore. Mr. Sciore is a sophisticated businessman, who has a history of more than twenty (20) years working professionally in the commercial and residential loan industries. Mr. Sciore testified in his deposition that he knows the difference between consumer and commercial transactions, that he knows what a confession of judgment is and what its effects are, as well as that he has signed many loan documents in the past with different banks. The record also reflects that Mr. Sciore actively

sought out the loan from Appellee[, and he had the opportunity to negotiate the terms of the loan with Appellee.] Additionally, the Limited Liability Company Resolution Collateral Guarantee expressly states Eagle Rock held a Resolution meeting on December 19, 2014, and that a resolution was adopted that authorized [Mr.] Sciore "[t]o guarantee or act as surety for loans or other financial accommodations to Borrower from Lender on such guarantee or surety terms as may be agreed upon between the member of the Company and Lender and in such sum or sums of money as in his or her judgment should be guaranteed or assured, without limit (the "Guaranty")." The Resolution also authorized Mr. Sciore "[t]o mortgage…or otherwise encumber and deliver to Lender any property now or hereafter belonging to the Company in which the Company now or hereafter may have an interest, including without limitation to all of the Company's real property…as security for the Guaranty, and as security for the payment of any loans, any promissory notes, or any other or further indebtedness of [Mr.] Sciore and [Mrs.] Sciore to Lender at any time owning, however the same may be evidenced."

Based on the record, it is apparent that Mr. Sciore, acting on behalf of [Eagle Rock], sought to enter into the Guaranty and its terms willingly, intelligently, and knowingly; [neither Eagle Rock nor Mr. Sciore] were coerced or placed under any duress in executing the Guaranty; and [Eagle Rock] indicated in the Guaranty and the Mortgage Security Agreement that it received "valuable consideration" when it signed said documents. [The trial court] finds that [Eagle Rock] failed to show it lacked a "meaningful choice" when it entered into the Guaranty with Appellee, and that [Eagle Rock] failed to show that the Guaranty and warrant of attorney were unreasonably favorable to Appellee. Therefore, [the trial court] holds that the Guaranty and warrant of attorney were not unconscionable.

As to Appellants' argument that the loan was unconscionable because the Guaranty containing the warrant of attorney to confess judgment was obviously required by Appellee to secure the lien of a quick judgment against the Sciores,…[the trial court] finds the argument to be without merit….[As indicated *supra*,] Mr. Sciore, the sole member of [Eagle Rock], sought out the loan with Appellee, and he offered the Property as collateral. Appellee was not aware that [Eagle Rock] held legal title to the Property until Mr. Sciore submitted financial information that was required for the appraisal of the Property. Appellee then required [Eagle Rock] to become a Guarantor of the loan because the LLC,

not Mr. Sciore, held legal title to the property that Mr. Sciore was offering as collateral….The facts also indicate that [Eagle Rock], through Mr. Sciore, signed the Guaranty in order to entice Appellee to make the loan. Mr. Sciore, who acted on behalf of [Eagle Rock], was aware and understood the provisions contained in the Guaranty, and therefore, [Eagle Rock] understood the provisions of the Guaranty, including the warrant of attorney for confession of judgment[.]

Trial Court Opinion, filed at J-1633-2020, 12/23/20, at 10-13 (citations to record omitted).

Moreover, as it specifically pertains to Mrs. Sciore, the trial court relevantly indicated:

As to Appellants' allegation that the warrant of attorney is a contract of adhesion and is unconscionable because Mrs. Sciore was an "unsophisticated borrower," [the trial court] finds Appellants' argument to be without merit. In Pennsylvania, willful ignorance is no defense. "[A]bsent fraud, failure to read a [contractual document] is an unavailing excuse or defense and cannot justify an avoidance, modification or nullification of the contract or any provision thereof." **McDonald v. Whitewater Challengers, Inc.**, 116 A.3d 99, 120 (Pa.Super. 2015). The record reflects that although Mrs. Sciore testified in her deposition that she was not a businesswoman; that there was no business for which she could have use the loan proceeds; and that she signed the loan documents at the request of her husband, there is also evidence that she speaks, reads, and understands English, and that she testified on several occasions throughout her deposition that she neither read nor made an effort to understand the loan documents because she trusted her husband.

Appellants' argument that Mrs. Sciore had no knowledge or understanding of the confession of judgment is without merit because the record is clear that she made no effort to gain an understanding of the confession of judgment by either asking Appellee or Mr. Sciore, who is a sophisticated businessman that has both a residential and commercial background in selling and brokering loans, to explain the terms of the loan to her. The record and facts indicate that, although Mrs. Sciore made no attempt to read the loan documents, she still chose to sign the

- 14 -

confession of judgment, sign and initial each and every paragraph of the two separate disclosures of judgment attached to the Note, and initialed and/or signed that she understood that the Note contained a confession of judgment provision that would permit Appellee to enter judgment against her in court after a default on the Note without notice. Additionally, by signing the loan documents, Mrs. Sciore also indicated that she knowingly, intelligently, and voluntarily waived her rights, including any right to advance notice of the entry of judgment against her. Therefore, [the trial court] finds that Mrs. Sciore's willful failure to read and/or understand the loan documents cannot be used by Appellants as a defense to justify avoidance, modification, or nullification of the loan.

Trial Court Opinion, filed at J-1632-2020, 12/23/20, at 10-11 (citations to record omitted).

We find the trial court did not abuse its discretion. Appellants failed to present sufficient evidence that they lacked a meaningful choice with regard to its contractual obligations or that the obligations were unreasonably favorable to Appellee. **See Snyder**, **supra**.

Moreover, as it specifically pertains to Mrs. Sciore, the trial court found the record demonstrated that, while she was not a sophisticated businesswoman, the loan documents clearly set forth her obligations. The fact Mrs. Sciore chose to make no effort to understand, or even read, the documents does not render the confession of judgment provisions unconscionable. "The failure to read a confession of judgment clause will not justify avoidance of it. This is particularly true where the confession of judgment clause is clear and conspicuous and part of a commercial transaction." **Dollar Bank, Fed. Sav. Bank v. Northwood Cheese Co.,**

*Inc.*, 637 A.2d 309, 313 (Pa.Super. 1994) (citations omitted). The confession of judgment clauses in the instant case, standing out in bold print, possessed all of these attributes. Thus, the trial court did not err in denying Appellants' petitions to open on this basis.

In their next issue, Appellants contend the trial court erred in failing to strike, open, or modify the confession of judgment since the amount of the judgment was unreasonable and grossly excessive. Specifically, Appellants contend the inclusion of Appellee's attorneys' fees, which were set by the Note and Guaranty at ten percent of the unpaid principal balance of the loan plus accrued interest, rendered the confessed judgment unreasonable and grossly excessive.

Appellants admit the loan documents provided for the ten percent attorneys' fees; however, they contend the "amount of the attorneys' fees included in [the] confessed judgment are grossly excessive [since] they are not commensurate with the amount of work and time that [Appellee's] attorney spent to prepare a complaint and to confess judgment." Appellants' Brief at 43 (citation omitted).

This Court has held:

> If a confessed judgment includes an item not authorized by the warrant, the judgment is void in its entirety and must be stricken. However, if the judgment as entered is for items clearly within the judgment note, but excessive in amount, the court will modify the judgment and cause a proper judgment to be entered. If the judgment was entered for an amount which was grossly excessive, the judgment must be stricken in its entirety.

***Dollar Bank, Fed. Sav. Bank***, 637 A.2d at 314 (citations omitted).

This Court has upheld attorneys' fees in the amount of fifteen percent when such were specifically authorized by the warrant of attorney in a confession of judgment action. ***See id.***

In the case *sub judice*, in rejecting Appellants' contention, the trial court relevantly indicated the following:

> Based on the record and the facts, it is clear that the 10% attorneys' fees were authorized by the loan documents. This is evidenced by the Confession of Judgment provision in the Guaranty, which states that:
>
>> [The] [g]uarantor hereby irrevocably authorizes and empowers any attorney or the Prothonotary or Clerk of any court in the Commonwealth of Pennsylvania, or elsewhere, to appear at any time for borrowers after the amounts hereunder become due and without complaint filed, confess or enter judgment against borrower for the entire principal balance of this note and all accrued interest, late charges and any and all amounts expended or advanced by lender relating to any collateral securing this note, together with costs of suit, and an attorneys' commission of ten percent (10%) of the unpaid principal balance and accrued interest for collection, but in any event not less than five hundred dollars ($500)….
>
> ***See*** Exhibits from the Depositions—Jointly Submitted by the Parties, Exhibit 16, September 10, 2020 (emphasis omitted).
>
> In Appellee's May 26, 2020, Complaints in Confession of Judgment, Appellee itemized the amount that was due as a result of the [Sciores'] default, which [Eagle Rock] failed to cure. Appellee indicated that the total amount due was $277,429.26, which included the principal balance due of $249,497.88, the accrued interest as of May 11, 2020, in the amount of $2,614.53, the late fees due in the amount of $105.61, and the attorneys' fees in the amount of $25,211.24, which was calculated as being 10% of the loan principal plus accrued interest.

> [The trial court] finds that the requested attorneys' fees in this matter are neither unreasonable nor excessive because the fees sought by Appellee equate to 10% of the total principal loan balance plus accrued interest, and the Guaranty, which [Appellants] signed and [are] bound by, authorized 10% attorneys' fees in the event of a default. Further, Appellee has stated that it is only seeking to collect the 10% of attorneys' fees against either [Eagle Rock] or the [Sciores]. Appellee explained that if [Eagle Rock] satisfies the total judgment, then it will not attempt to collect the same attorneys' fees from the [Sciores], or in the alternative, if [the Sciores] satisfy the total judgment, Appellee will not seek the requested attorneys' fees from [Eagle Rock].

> [The trial court] holds that the attorneys' fees sought by Appellee in the amount of $25,211.24 are neither unreasonable nor excessive because the 10% fees were authorized by the loan documents; the Pennsylvania appellate courts have determined a 15% commission to not be excessive; and litigation is ongoing. Thus, [the trial court] finds no basis to strike,…open, [or modify] the judgment.

Trial Court Opinion, filed 12/23/20, at 15-16 (footnote omitted).

We find no error or abuse of discretion in this regard. Here, the warrant of attorney specifically authorized attorneys' fees in the amount of ten percent. *See id.* Further, as to Appellants' claim the attorneys' fees are excessive since they are not commensurate with the amount of time spent by Appellee's attorney in this case, we simply note that Appellee's attorneys filed complaints for confession of judgment, answers, and multiple responses to Appellants' petitions. *See id.* at 16 n.7. Further, Appellee's attorneys participated in three lengthy depositions, as well as oral argument before the trial court, and they have filed an appellate brief on behalf of Appellee. *See id.* Thus, we agree with the trial court that Appellants are not entitled to have

- 18 -

the confession of judgment stricken, opened, or modified based on the amount of the attorneys' fees included in the judgment on this basis. **See Dollar Bank, Fed. Sav. Bank**, *supra*.

In their next issue, Appellants contend the trial court abused its discretion in failing to open the confession of judgment since Appellants disputed the default. Specifically, Appellants contend they had no obligation to pay the Note until Appellee made a demand for payment. However, Appellee never made any demand for payment.[7]

Moreover, Appellants contend the trial court should have opened the confession of judgment since Appellants disputed the calculations of the amount due under the Note. Specifically, Appellants contend Appellee advanced a $40,000.00 line of credit to M.S. Acquisitions & Holdings, LLC, which is an entity in which Mr. Sciore is a member, and this advanced line of

---

[7] We note that Appellee avers the loan documents reveal that Appellants expressly waived their right to pre-judgment notice of default. **See** Appellee's Brief at 35-36. Appellants, on the other hand, argue the loan documents were, at the very least, ambiguous as to whether notice was required prior to the entry of a confession of judgment based on a default. **See** Appellants' Brief at 45. Appellants specifically aver "[t]he trial court failed to address the ambiguities of the loan documents and, instead, held that no notice and no demand was required because the Sciores and Eagle Rock waived the rights to receive advanced notice of the entry of the confessed judgment." **Id.** at 48 (citation to record omitted).
We conclude it is unnecessary to determine whether Appellants were entitled to pre-judgment notice of the default. As discussed *infra*, the trial court concluded, *inter alia*, that Appellants received notice of the default prior to Appellee's filing of the complaints for confession of judgment, and we find no abuse of discretion in this regard.

credit was used to pay the past due amounts on the loan. Appellants contend that, in determining the amount due under the Note, Appellee failed to account for the application of the $40.000.00 line of credit.

> When a complaint for confession of judgment is filed…the plaintiff need only aver a default and allege the amounts due. Unless it is evident from the face of the instrument that the judgment is grossly excessive, or includes recovery for items not authorized by the instrument, a challenge to the accuracy of such amounts should be resolved by a petition to open the judgment.

*Davis v. Woxall Hotel, Inc.*, 577 A.2d 636, 638 (Pa.Super. 1990) (citations omitted).

In rejecting Appellants' claim, the trial court aptly indicated the following:

> Appellants allege that [the trial court] erred in denying [their] Petitions to Open the Confessed Judgment because the Note was payable on demand, but no demand for payment in full was made by Appellee. We find this argument to be without merit.
>
> The record reflects that Mr. Sciore testified in his deposition that he had received statements regarding the loan and its balance throughout 2019. Mr. Sciore averred that he stopped receiving these loan statements from Appellee beginning in 2020. However, Mr. Sciore also testified that, since the origination of the loan, he authorized for the loan statements to be mailed to 535 Route 38 East, Suite 100, Cherry Hill, New Jersey, which is the address associated with Mega-Philadelphia, LLC ("Mega-Philadelphia"). [Mr. Sciore is the Chief Executive Officer of M.S. Acquisitions & Holdings, LLC, which holds ownership of Mega-Philadelphia.] Mr. Sciore further testified that, in 2020, Mega-Philadelphia closed its office at the above address. Additionally, Mr. Sciore testified that he never notified Appellee of the closure of the Mega-Philadelphia office, that he never notified Appellee to have the loan statements sent to the P.O. Box where mail for Mega-Philadelphia was being forwarded, and that he never requested that Appellee forward any replacement loan statement to him that he did not receive. In his own deposition, Mr. Bonafede testified that Appellee continued to send loan

- 20 -

statements to the address that Mr. Sciore requested, which was 535 Route 38 East, Suite 100, Cherry Hill, New Jersey. Appellee also submitted Exhibit 12 at the Oral Argument [before the trial court] on September 10, 2020, which consisted of copies of the loan statements from the end of 2019 until August 2020, which Appellee indicated were sent to the address for Mega-Philadelphia, and which notified [Appellants] of the payment due, past payment due, late fees, and the principal balance of the loan.

The record also reflects that, on March 2, 2020, Appellee's counsel sent Walter Weir, Jr., Esq., an attorney representing Appellant[s], a letter[8] that indicated that a portion of the undistributed funds from a loan ("Loan 1") by Appellee to M.S. Acquisitions & Holdings, LLC ("M.S. Acquisitions"), which was guaranteed by [Mr.] Sciore, was being used to pay off past due amounts on the [instant] loan, as well as several other loans that Appellee had entered into with Mr. Sciore and/or companies [with which] he was associated[.] The letter further indicated that "…there were discussions and an agreement by Mr. Sciore and [an officer of Appellee] to apply a portion of the 'Undistributed Funds' from Loan 1 to certain past due amounts on…" several loans including the loan at issue, and that "Mr. Sciore was aware that [the] five payments were required [] so that [Appellee] would not declare a written event of default and take judgments against each of the responsible parties for…" the loan. The letter further indicated that $2,616.46 was applied to the [instant] loan from the undistributed funds of Loan 1. Additionally, the letter advised Appellants…and their counsel that the loan was again becoming past due, and that a payment would need to be made on the loan to prevent another event of default. Appellee explained that, upon default, all amounts on the loan would become immediately due and Appellee had the right to exercise the rights and remedies agreed to in the loan documents, which included Appellee's right to file judgments against all of the obligors and guarantors of the loan.

\*\*\*

The record is clear that Appellee mailed loan statements to Mr. Sciore each month, but Mr. Sciore may not have received said statements because he failed to provide Appellee with an updated address and/or to request replacement statements. Appellants cannot rely on the assertion that [they were] without knowledge

---

[8] Appellants do not dispute that they received the March 2, 2020, letter.

of the amounts due on the loan for the months prior to March 2020 as a defense because [they] willfully failed to provide Appellee with an updated address….Additionally, and in any event, the March 2, 2020, Letter advised [Eagle Rock] and the [Sciores] that the loan was again becoming past due, and that a payment would need to be made on the loan to prevent another event of default from occurring. However, [the Sciores] still failed to make payments on the loan for the months of March, April, and May of 2020, and [Eagle Rock] failed to cure the [Sciores'] default. On or about May 22, 2020, [the Sciores] did make a payment of $850.00, which Appellee received on June 1, 2020. [However,] at the time of payment, the $850.00 did not bring the loan current.

Additionally, [the trial court] finds no merit in Appellants' arguments that the confessed judgment should have been opened because there were disputes concerning whether (a) the loan was in default and (b) whether the calculations of the amount due under the Note were accurate after Appellee applied monies in advanced from another line of credit and held as collateral to the loan. The record indicates that after receiving the March 2, 2020, Letter, [the Sciores] and/or [Eagle Rock] failed to make payments on the loan, which resulted in Appellee filing its Complaint[s] in Confession of Judgment. Appellant[s] argue that [they] believe the loan was current because there were discussions between Mr. Sciore and Appellee with regard to the application of $40,000.00, which Appellee held as collateral to another loan, to payoff amounts due on several of Mr. Sciore's loans. However, deposition testimony from Mr. Bonafede reflected that Mr. Sciore never agreed to allow Appellee [to] apply the $40,000.00 to past due loans. Mr. Bonafede also testified that said discussions related to applying the money to several SBA loans, not to the loan at issue.

[The trial court] finds that there was no dispute as to whether a default occurred because the record is clear that [Eagle Rock] and the [Sciores] were made aware in March of 2020 that the loan was becoming past due, but [the Sciores] still failed to make payments and bring the loan current throughout the months of March, April, and May of 2020. Additionally, [Eagle Rock] failed to cure this default by the [Sciores]. Appellee admits that [the Sciores] made a payment of $850 on or about May 22, 2020, which Appellee received on June 1, 2020; however, the payment failed to make the loan current. Further, Appellants cannot rely on the assertion that [they] believed Appellee applied the

$40,000.00 that Appellee held in collateral to another loan because the facts indicate Mr. Sciore never agreed to the application of said money, and the discussions about applying the $40,000.00 concerned the SBA loans only, not the loan at issue. Appellant[s] failed to offer sufficient evidence to show that the discussion concerning the application of the $40,000.00 involved the loan at issue. Appellant[s] also failed to offer sufficient evidence that demonstrated that Appellee's calculations of the amount due under the Note were inaccurate and resulted in a judgment that included excessive principal and interest.

Trial Court Opinion, filed 12/23/20, at 17-21 (footnotes and citations to record omitted) (footnote added).

We conclude the trial court's reasoning is sound, and the court did not abuse its discretion. *See PNC Bank*, *supra* (setting forth standard of review for petition to open a confessed judgment). Appellants failed to produce sufficient evidence that the loan was not in default or that they did not receive notice of the default.[9] Moreover, Appellants failed to produce sufficient evidence that the judgment included excessive principal and interest.

---

[9] A review of the equities in this case strengthens our conclusion that the trial court did not err in denying Appellants' petition to open. *See Atlantic Nat. Trust, LLC v. Stivala Investments, Inc.*, 922 A.2d 919, 924-25 (Pa.Super. 2007). As the trial court determined, Appellants were regularly receiving statements pertaining to the loan until the beginning of 2020, at which time Appellants closed the business office where they were receiving the statements. Appellants then failed to update their mailing address and/or request replacement statements. In any event, Appellants received the March 2, 2020, letter advising of the status of the loan. Accordingly, "we find no abuse of discretion, as the equities in this matter militate against the judgment debtor[s]." *See id.*

Accordingly, the trial court properly denied Appellants' petition to open the confession of judgment on this basis. **See Ferrick**, **supra**.

In their final issue, Appellants contend the trial court abused its discretion in denying Appellants' petitions to open the confessed judgment since the totality of the circumstances gave rise to meritorious defenses. Specifically, Appellants contend the trial court failed to consider Appellee's bad faith, which included failing to give Appellants notice that they were in default of the loan prior to confessing judgment and failing to apply $40,000.00 worth of proceeds from Loan 1 to the instant loan.

We conclude Appellants are attempting to relitigate arguments, which we rejected *supra*. In any event, as the trial court determined, Appellants have failed to set forth evidence that Appellee acted in bad faith. **See** Trial Court Opinion, filed 12/23/20, at 24 (holding Appellee did not "unilaterally" apply funds to make a payment on the loan, rather, the parties agreed that Appellee would apply a portion of Loan 1 to several outstanding loans, including the instant loan); 24-45 (holding that Appellee gave Appellants notice of the default).

For all of the foregoing reasons, we affirm.

Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 09/03/2021