**GRAYSTONE BANK, Appellee**

v.

**GROVE ESTATES, LP., Appellant.**

Graystone Bank, Appellee

v.

Timothy F. Pasch, Appellant.

Graystone Bank, Appellee

v.

Maximus Fugacious, LLC, Appellant.

Graystone Bank, Appellee

v.

Timothy F. Pasch Inc., Appellant.

Graystone Bank, Appellee

v.

Grove Estates, LP., Appellant.

Graystone Bank, Appellee

v.

Grove Estates, LP., Appellant.

Graystone Bank, Appellee

v.

Timothy F. Pasch, Appellant.

Graystone Bank, Appellee

v.

Maximus Fugacious, LLC, Appellant.

Graystone Bank, Appellee

v.

Timothy F. Pasch Inc., Appellant.

Superior Court of Pennsylvania.

Argued Aug. 21, 2012.

Filed Dec. 13, 2012.

Michael Tolcott, Bala Cynwyd, for appellants.

John N. Keller and Andrew J. Benchoff, Waynesboro, for appellees.

BEFORE: STEVENS, P.J., BENDER, J., and GANTMAN, J.

OPINION BY STEVENS, P.J.

Appellants appeal from the order entered by the Court of Common Pleas of York County denying their petition to strike and/or open a confessed judgment against them and in favor of Appellee Graystone Bank. We affirm in all respects except on the issue regarding application of the attorney's fee-shifting provision, which we remand to the lower court for its determination as to whether the provision worked a reasonable result under the circumstances.

The trial court has aptly provided all pertinent facts and procedural history, as follows:

On August 29, 2008, Grove Estates LP [ ] executed a Promissory Note in favor of Graystone Bank [ ] for the principal amount of $9,500,000 in order to refinance [ ] Grove Estate's building project. The Promissory Note was an "interest only" obligation requiring [Grove Estates] to [make only] monthly interest payments and providing that the principal of the loan would come due upon the maturity date of the Note, September 1, 2010. On September 30, 2010, the Parties entered a Change in Terms Agreement extending the maturity date of the loan to November 5, 2010.

[For purposes of background, we note that] [b]eginning in 2008, [Grove Estates] was struggling to make the monthly interest payments on the loan. [Grove Estates] traces these difficulties to a dispute with PNC Bank regarding a construction loan agreement related to another building project, the Seasons. As a result, Graystone Bank required [Grove Estates] to establish an interest reserve to ensure the monthly payments would be made. To meet this interest reserve Graystone required [Grove Estates] to pledge additional real estate as collateral first in September of 2009 and again in March of 2010. In conjunction with the Change in Terms Agreement, Graystone Bank required [Grove Estates] to pledge additional real property and establish another interest reserve.

Beginning on or around August of 2010, [Grove Estates], through its principal Timothy F. Pausch, and Graystone Bank, primarily through its then employee [and bank Vice President] Nathan Lightner, began discussing the possibility of Graystone re-financing the Grove Estates and Seasons Projects into one loan package. [Grove Estates] alleges that representations were made by Graystone that the bank was negotiating with PNC concerning the buy out of the Seasons loan and that, on the eve of the November 5, 2010 maturity date, the refinance deal was imminent. No deal with PNC[, however,] was executed.

[Grove Estates] failed to pay the balance of the principal and accrued interest on November 5, 2010 in violation of the loan agreement. As a result of the default, [Graystone Bank] confessed judgment against [Grove Estates] on February 14, 2011 in the amount of $10,650,027.74, comprising the $9,500,000.00 principal

balance, interest, late charges and attorney's fees.

[Grove Estates] filed a Petition to Open and/or Strike the Confessed Judgment and Request for Stay on March 14, 2011. [The lower court] determined that the Petition stated *prima facie* grounds for relief and issued a rule to show cause on [Graystone Bank].... [Graystone Bank] filed answers to the Petition and written discovery was exchanged. Defendant Timothy F. Pasch was deposed on June 28, 2011. [The lower court] heard oral arguments on the Petition on September 12, 2011.

Pa.R.A.P. 1921(a) Opinion, dated 12/19/11, at 1–3.

In denying the Petition to Open/Strike, the lower court disagreed with Appellants' assertion that a fatal defect or irregularity attended the record of the confessed judgment. Specifically, Appellants focused attention on the warrant of attorney (cognovit), which appeared neither on the signature page of the August 29, 2008 Promissory Note nor on any part of the September 30, 2010 Change in Terms Agreement. First, the court rejected Appellants' interpretation of *Frantz Tractor Co. v. Wyoming Valley Nursery*, 384 Pa. 213, 216, 120 A.2d 303, 305 (1956) and its progeny to require that the signature of a party to be bound by the warrant must appear on the same page as the warrant. While this precedent clearly stands for the proposition that the signature "directly relate" to the warrant, the lower court noted, there was no indication in those holdings of a "same page" requirement. Here, the "direct relation" test was met where the warrant immediately preceded the signature page and was typed in conspicuous, all-capital letters, the court held.

Nor was the complete absence of the cognovit from the Change of Terms Agreement fatal, the court continued, deeming the agreement nothing more than an extension of the original Promissory Note's maturity date and not, as Appellants argued, a new, comprehensive agreement setting new burdens and benefits upon the parties. As such, the Change of Terms Agreement was distinguishable from a lease renewal, which must contain its own warrant of attorney under our jurisprudence given its status as a novation expressing all rights and responsibilities between the parties from a new start date to end date. In contrast, the Change of Terms Agreement changed only the maturity date and, given the limits of its scope, did not purport to relieve Appellants from the remaining conditions set forth in the original Promissory Note. The court, therefore, found no defect or irregularity with the absence of a warrant of attorney from the Change of Terms Agreement.

The attorney's fees awarded by the confession of judgment likewise failed to constitute a fatal defect or irregularity on the record, the court reasoned. Pursuant to the warrant of attorney in the Promissory Note, the confession of judgment awarded Graystone Bank attorney's fees in the amount of 10% of the principal balance, or $966,361.11 as it were in the instant matter. The lower court recognized precedent mandating modification of awarded attorney's fees that were authorized under the warrant yet still unreasonably excessive under the circumstances, *See Dollar Bank, Fed. Sav. Bank v. Northwood Cheese Co.*, 431 Pa.Super. 541, 637 A.2d 309 (1994), and deemed operation of the 10% provision in this case facially reasonable.

The lower court next addressed Appellants' several arguments in favor of opening judgment, all of which depend on a finding that Graystone, through its representatives, misled Timothy Pasch and Grove Estates to their detriment into believing that refinancing of their existing

loan was a "done deal." Defeating these claims of material misrepresentation and detrimental reliance, according to the lower court, was Timothy Pasch's own testimony. Viewing the testimony in a light most favorable to Pasch while rejecting all contrary evidence, the court determined that Pasch himself acknowledged he understood that conditions necessary to the proposed refinancing plan remained both unmet and beyond the control of Graystone's negotiation point man and Vice President Nathan Lightner, despite Lightner's repeated expressions of optimism that ultimate approval was a mere formality. As Appellants predicated their case for opening judgment on insufficient evidence of material misrepresentation and detrimental reliance, the lower court reasoned, denial of the petition was required.

On appeal, Appellants raise the following issues:

I. WHERE THE INSTRUMENT ON WHICH A BANK CONFESSED JUDGMENTS CONTAINED NO WARRANT OF ATTORNEY AUTHORIZING CONFESSIONS OF JUDGMENT, DID THE LOWER COURT ERR IN REFUSING TO STRIKE THE JUDGMENTS?

II. WHERE THE WARRANT OF ATTORNEY PROVISION ON WHICH A BANK RELIED WAS NOT ON THE SIGNATURE PAGE OF THAT DOCUMENT, DID THE JUDGMENTS VIOLATE THE REQUIREMENT OF CLOSE PROXIMITY BETWEEN THE WARRANT OF ATTORNEY AND THE SIGNATURE OF THE PARTY TO BE BOUND, THUS REQUIRING STRIKING OF THE JUDGMENTS?

III. WHERE CONFESSED JUDGMENTS INCLUDE MORE THAN $3.7 MILLION FOR ATTORNEY'S FEES BASED ON THE FILING OF BOILERPLATE CONFESSION PAPERS, ARE THE [FOUR] JUDGMENTS PATENTLY EXCESSIVE ON THEIR FACE, THUS REQUIRING STRIKING OF THE JUDGMENTS?

IV. WHERE THE DEFENDANT–BORROWER ON A PETITION TO OPEN CONFESSED JUDGMENT PRESENTS EVIDENCE THAT THE PLAINTIFF–BANK FALSELY REPRESENTED THAT APPROVAL OF A REFINANCING PACKAGE WAS A MERE FORMALITY, AND THAT THE MATURITY DATE WOULD BE EXTENDED TO ALLOW TIME FOR DOCUMENTATION, AND THE BORROWER FORBORE FROM SEEKING ALTERNATIVE FINANCING IN REASONABLE RELIANCE ON THE MISREPRESENTATIONS, THUS ESTABLISHING PRIMA FACIE GROUNDS FOR OPENING THE CONFESSED JUDGMENTS ON GROUNDS OF MISREPRESENTATION, ESTOPPEL, AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, DID THE LOWER COURT ERR IN REFUSING TO OPEN THE JUDGMENTS?

Brief for Appellants at 7.

Our standard of review is well settled:

We review a trial court's order denying a petition to strike a confessed judgment to determine whether the record is sufficient to sustain the judgment. A petition to strike a judgment may be granted only if a fatal defect or irregularity

appears on the face of the record. Similarly, we review [an] order denying [an] Appellant's petition to open [a] confessed judgment for an abuse of discretion. * * *

In considering the merits of a petition to strike, the court will be limited to a review of only the record as filed by the party in whose favor the warrant is given, i.e., the complaint and the documents which contain confession of judgment clauses. Matters *dehors* the record filed by the party in whose favor the warrant is given will not be considered. If the record is self-sustaining, the judgment will not be stricken. However, if the truth of the factual averments contained in such record are disputed, then the remedy is by a proceeding to open the judgment and not to strike. An order of the court striking a judgment annuls the original judgment and the parties are left as if no judgment had been entered.... When determining a petition to open a judgment, matters *dehors* the record filed by the party in whose favor the warrant is given, i.e., testimony, depositions, admissions, and other evidence, may be considered by the court.

*Osprey Portfolio, LLC v. Izett*, 32 A.3d 793, 795–796 (Pa.Super.2011) (quoting *Hazer v. Zabala*, 26 A.3d 1166 (Pa.Super.2011) (citations omitted)).

After careful review of the record, party briefs, and lower court opinion, we have determined that the opinion authored by the lower court provides a clear, comprehensive, and correct disposition of three of the four issues at bar. To that end, we adopt the cogent analysis applied to issues 1, 2, and 4 above and affirm judgment on those issues.

We are constrained, however, to remand the matter raised in issue 3 so that the court may more deeply examine whether the attorney fee-shifting provision con-

tained in the warrant of attorney worked a reasonable result under the circumstances of this case. Below, we expound on both this issue and the issue raised with respect to the validity of the warrant of attorney.

■ To validate a warrant of attorney appearing in a promissory note, the signature of the executor must "directly relate" to the warrant. How this relationship manifests may be understood by a review of precedent:

We have noted the need for strict adherence to rules governing confessed judgments.[ ] As a matter of public policy, Pennsylvania applies a similar strict standard to establish the validity of a cognovit clause. This is so because "a warrant of attorney to confess judgment confers such plenary power on the donee in respect of the adjudication of his own claims that certain specific formalities are to be observed in order to effectuate the granting of such a power." *Frantz Tractor Co. v. Wyoming Valley Nursery*, 384 Pa. 213, 120 A.2d 303, 305 (1956). Accordingly, "[a] Pennsylvania warrant of attorney must be signed. And it will be construed strictly against the party to be benefited by it, rather than against the party having drafted it." *Egyptian Sands Real Estate, Inc. v. Polony*, 222 Pa.Super. 315, 294 A.2d 799, 803 (1972) (citations omitted). "A warrant of attorney to confess judgment must be self-sustaining and to be self-sustaining the warrant must be in writing and signed by the person to be bound by it. The requisite signature must bear a direct relation to the warrant of attorney and may not be implied." *L.B. Foster Co. v. Tri–W Const. Co.*, 409 Pa. 318, 186 A.2d 18, 20 (1962) (emphasis added).

A general reference in the body of an executed lease to terms and conditions to be found is insufficient to bind the

lessee to a warrant of attorney **not contained in the body of the lease** unless the lessee signs the warrant where it does appear. In short, a warrant of attorney to confess judgment is not to be foisted upon anyone by implication or by general and non-specific reference.

*Frantz Tractor Co., supra* at 305 [emphasis added]; *accord Egyptian Sands Real Estate, Inc., supra* at 804 (stating, "a warrant of attorney on the second page of a document will not be conclusive against the signer of the first page"), *Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1274–1275 (3d Cir.1994) (same).

*Hazer v. Zabala,* 26 A.3d 1166 (Pa.Super.2011) (holding cognovit invalid where located in unsigned addendum "incorporated by reference" in, and attached subsequent to signature page of, agreement.).

█ Here, the warrant of attorney appeared conspicuously in all caps on the very bottom of the penultimate page of the agreement and immediately *preceded* where the executor (Mr. Pasch) signed at the top of the following, final page. Evidence of this location of a conspicuous cognovit contained within the body of the agreement sufficed to establish that Mr. Pasch effectively signed his name to the warrant of attorney.

We therefore distinguish the present matter from precedent cited above invalidating warrants of attorney located either altogether outside the body of the agreement, too remote from the signature, or on pages subsequent to the signature. Because the location of the warrant of attorney related directly to the signature that immediately followed it, albeit on the next page, we concur with the trial court that a valid, signed, and self-sustaining warrant of attorney resulted. Accordingly, we reject Appellants' contention that a signature must appear on the same page as the cognovit in order to validate it.

█ Unreasonable attorney's fees also warranted striking the confessed judgment, Appellants argue. Pursuant to the warrant of attorney's fee-shifting clause, Appellees included in their confessed judgment attorney's fees in the amount of 10% of outstanding principal, or $966,361.11. Appellants argue that this figure, though reflecting the percentage stipulated to in the parties' contract, far exceeds a reasonable fee for filing four "boilerplate" confessions of judgment upon each of the Defendants/Appellees. We agree that the record fails to demonstrate whether the court conducted a reasonableness inquiry into the fees that resulted from operation of the 10% provision.

█ Our jurisprudence is clear that even where a contract authorizes fee-shifting in a particular amount, that amount must be reasonable under the circumstances. *McMullen v. Kutz,* 603 Pa. 602, 985 A.2d 769 (2009) (collecting cases from majority of states, including decisions applying to loan documents authorizing lender to recover legal expenses); *Dollar Bank, supra* at 314 (holding court will modify judgment and cause proper judgment to be entered where confessed judgment was entered according to contract but in excessive in amount).

█ It is unclear, however, whether the lower court recognized that the fee-shifting provision within the warrant of attorney was subject to a reasonableness standard. Indeed, the court states that the provision elsewhere in the agreement requiring a reasonable attorney fee for collecting on the loan was distinct, and, thus, did not "preclude the provision allowing the award of 10% of the principal in attorney's fees in the confession of judgment and render it obsolete." Lower

court opinion at 12. At the very least, it should be demonstrated that the 10% provision as applied under the circumstances does not work the kind of unconscionable result discussed by Justice Saylor in concurrence in *McMullen*:

> Of course, any contractual provision is enforceable according to its terms only to the limits of unconscionability. *See Salley v. Option One Mortgage Corp.*, 592 Pa. 323, 331–32, 925 A.2d 115, 119–20 (2007). Therefore, it is beyond dispute that an unconscionable fee-shifting provision, or a provision yielding unconscionable results, should not be enforced according to its terms.

*McMullen* at 617 n. 1, 985 A.2d at 778 n. 1 (Saylor, J. concurring and dissenting).

The record gives no indication if the court reviewed whether the 10% attorney's fee provision worked a reasonable result under the circumstances. We therefore must remand this matter for the court to conduct such review of the resultant attorney's fees and, if necessary, open and modify the confessed judgment to make the fee amount reasonable.

We therefore affirm judgment in all respects other than that pertaining to the confessed judgment of attorney's fees, which the lower court shall review in a manner consistent with this decision. Jurisdiction relinquished.

GANTMAN, J. CONCURS IN THE RESULT.