J-S19020-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| PATRICK BETHEL | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PATRICK HELLER | : | |
| | : | |
| Appellant | : | No. 282 EDA 2022 |

Appeal from the Judgment Entered January 5, 2022
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  2018-07211


BEFORE:   PANELLA, P.J., OLSON, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY OLSON, J.:                    **FILED AUGUST 30, 2022**

Appellant, Patrick Heller, appeals from January 5, 2022 judgment entered against him, and in favor of Patrick Bethel ("Bethel").  The judgment, entered after the conclusion of a non-jury trial,[1] held Appellant liable for the sum of $100,000.00, plus pre-judgment interest at the rate of six *per centum per annum* to be calculated starting on April 12, 2018.  We vacate the January 5, 2022 judgment together with an order entered November 3, 2021, as more fully described herein, and reverse the September 15, 2021 non-jury verdict.

On April 12, 2018, Bethel filed a complaint against Appellant, seeking judgment in the amount of $125,000.00 after Appellant failed to repay a loan

_____

[*] Former Justice specially assigned to the Superior Court.

[1] At the non-jury trial, the trial court concluded that Appellant owed a contractual duty to execute a confession of judgment agreement favoring Bethel.  ***See*** Trial Court Decision, 9/15/21, at 5; ***see also*** Trial Court Opinion, 3/7/22, at 6.

($100,000.00) plus interest ($25,000.00) pursuant to a promissory note entered into by the parties on May 30, 2010. Appellant filed preliminary objections, which the trial court subsequently overruled. On October 8, 2018, Appellant filed an answer to the complaint, as well as new matter.

On August 26, 2021, the trial court, after concluding a one-day, non-jury trial, held the matter under advisement pending the preparation of the notes of testimony. On September 15, 2021, the trial court rendered a non-jury verdict in favor of Bethel and against Appellant in the amount of $100,000.00. In entering its non-jury verdict, the trial court made the following findings of fact:

**Findings of Fact**

1.    [Bethel] and [Appellant] are long-time friends.

2.    On May 30, 2010, [Bethel] advanced [Appellant] the sum of $100,000[.00], in exchange for a written promissory note signed by [Appellant]. The promissory note recited a principal amount of $100,000[.00] and an annual interest rate of 25% and provided that [the note became] payable in one year, on May 30, 2011, by a single lump-sum payment of $125,000[.00].

3.    The promissory note provided that it "may not be amended or modified unless in writing signed by" both parties.

4.    [Bethel] advanced the $100,000[.00] for use by [Appellant] in connection with a pending real estate development. Although [the parties referred to Bethel] as an "investor" in the [real estate] development, the nature of the "investment" was a debt obligation, not an equity interest, and there was no agreement that repayment of the debt would be contingent on the financial success of the [real estate] development.

5.    Prior to the maturity date of May 30, 2011, [Appellant] notified [Bethel] that because of problems with the [real estate] development, he lacked the funds to pay the amount due.

6.    In the fall of 2013, with no payment by [Appellant], the parties explored alternative arrangements for payment. In their discussions, [Bethel] stated his willingness to waive the interest and accept $100,000[.00] in full payment, but he wanted [Appellant] to agree to the entry of judgment against him in that amount. [Bethel's] counsel prepared a [draft] of [a] confession of judgment [agreement] for [Appellant's] signature.[2]

7.    In an email [dated] November 11, 2013, at 4:56 p.m., [Appellant] proposed to [Bethel] that the confession of judgment be accompanied by a "forbearance agreement with the outside date of [June 1, 2015]." [Appellant] explained that while the original real estate development was not doing well, he was now involved with a "shopping center deal" that would generate the needed funds [to satisfy the debt obligation] by that date.

8.    On November 12, 2013, at 10:06 a.m., [Bethel] replied (with copy to his counsel) that he was agreeable to [the inclusion of] forbearance language "in return for 6% interest applying to the [promissory] note from the date of the judgment."

9.    On November 12, 2013, at 10:19 a.m., [Appellant] replied (with copy to [Bethel's] counsel)[,] "Please proceed." [The trial court determined that t]his email constituted an acceptance by [Appellant] of the offer conveyed in [Bethel's prior email sent that same day at] 10:06 a.m.

10.   Thus, as of November 12, 2013, the parties had an agreement that[:] (a) judgment [by confession] would be

_____

[2] The trial court's finding that Bethel's counsel prepared a confession of judgment agreement for Appellant's signature is supported only by what is represented in, and the inferences which may be draw from, the electronic mail ("email") exchange between the parties, as discussed in greater detail *infra*. The certified record does not contain a written draft of a confession of judgment agreement.

entered in favor of [Bethel] and against [Appellant] for $100,000[.00]; (b) interest would accrue on the judgment at the rate of 6% *per annum* from the date of judgment; and (c) [Bethel] would forbear on enforcing the judgment until June 1, 2015.

11. On November 14, 2013, at 9:28 a.m., [Appellant sent an email to Bethel asking,] "Are you sure you really need to enter this judgment? I'll only ask once, can we forego this exercise and still rely on the covenant we've agreed to?"

12. The "covenant" that [Appellant] referred to was the original promissory note.

13. On November 14, 2013, at 10:02 a.m., [Bethel] replied[,] "I would consider not filing the judgment if you can provide me with a full report on the [real estate] development projects in place and agree to continue updating me on set dates as we move forward."

14. On November 14, 2013, at 10:16 a.m., [Appellant] replied[,] "[Capeesh]!!! Let's stipulate that we have monthly updates. Commencing in December [2013], I will be doing monthly updates and will make you part of the conversation."

15. After an exchange of emails on the specific schedule for updates, on November 15, 2013, at 10:44 a.m., [Bethel] stated[,] "I will defer decision on filing the judgment until after the December 15[, 2013 update] and I have a clear understanding of what is going on. Let me know if that works."

16. On November 29, 2013, at 12:41 p.m., [Bethel's] counsel sent an email [to both Bethel and Appellant,] asking [Appellant] for "the status of the [confession of] judgment document."[3 Bethel] replied [to his counsel and to Appellant that] "I have agreed with [Appellant] to hold off

---

[3] To reiterate, a written draft of the "confession of judgment document" was not introduced as evidence during the non-jury trial. Similarly, no evidence was introduced during the non-jury trial showing that such a document was sent to Appellant *via* email as an attachment.

for now and contingent upon him providing monthly updates regarding project progress."

17. By the emails from [Bethel] on November 14[, 2013,] and [November] 29, 2013 - stating that he would "defer decision on filing the [confession of] judgment" and would "hold off for now" – [Bethel] did not accept [Appellant's] proposal to "forego" the entry of [a confession of] judgment and to rely on the original promissory note and did not abrogate [Appellant's] obligation to provide a signed confession of judgment [document] under the November 12[, 2013] agreement. Instead, [Bethel] agreed only to defer [Appellant's] performance of that obligation pending the submission of updates on the shopping center deal.

18. On December 16, 2013, [Appellant sent Bethel an email containing] a description of the shopping center deal and its status. [Bethel] responded that it "sounds promising."

19. In an exchange of emails in late January 2014, [Bethel] agreed that the updates from [Appellant] would be made quarterly rather than monthly.

20. [Appellant] did not adhere to the quarterly update schedule.

21. At some point in time, the parties met at [a] restaurant [] in King of Prussia[, Pennsylvania] and discussed the status of repayment and [] the shopping center deal. No agreement on any change in the terms of entry of judgment or forbearance was reached at that meeting.

22. [Appellant] never [] signed [a] confession of judgment [agreement], nor did he make any repayment to [Bethel].

23. On April 12, 2018, [Bethel] commenced [a cause of] action against [Appellant] by [] filing [] a complaint [containing] a single count, seeking judgment in the amount of $125,000[.00].

24. [A] non[-]jury trial was held on August 26, 2021. Prior to and during [the non-jury] trial, [Appellant's] counsel argued that any claim for enforcement of the promissory note was barred by the four-year statute of limitations, 42 Pa.C.S.[A.] § 5525(a)(7), since the action was commenced more than four years after the maturity date of the [promissory] note. [Bethel's] counsel asserted that this argument was

> irrelevant because [Bethel] was not suing on the [promissory] note but, rather, was suing to enforce a new agreement reached between the parties in [November] 2013. His counsel did acknowledge that he was seeking a judgment for $100,000[.00], not $125,000[.00, as well as interest from June 1, 2015].

Trial Court Decision, 9/15/21, at 1-4 (record citations, ellipsis, original brackets, footnotes, and extraneous capitalization omitted).

On September 15, 2021, the trial court returned a verdict in favor of Bethel, and against Appellant, finding Appellant in breach of a contractual obligation formed on November 12, 2013. On October 8, 2021, Bethel filed a motion to mold the non-jury verdict to include an award of pre-judgment interest. On October 29, 2021, Appellant filed an answer to Bethel's motion to mold the non-jury verdict, as well as a motion requesting permission to file a post-trial motion or motion for reconsideration *nunc pro tunc*.

On November 3, 2021, the trial court granted, in part, Bethel's motion to mold the non-jury verdict. The trial court amended the non-jury verdict to include an award of pre-judgment interest at the rate of six *per centum per annum* to be calculated starting on April 12, 2018, the date Bethel commenced his breach of contract action against Appellant. On November 3, 2021, the trial court also granted Appellant permission to file a post-trial motion *nunc pro tunc* within ten days. On November 15, 2021, Appellant filed a post-trial motion *nunc pro tunc*, requesting the trial court reconsider its non-jury

verdict.[4]  On December 27, 2021, the trial court denied Appellant's post-trial motion.  Pursuant to Appellant's *praecipe* to enter judgment, judgment in the amount of $100,000.00 plus pre-judgment interest at a rate of six *per centum per annum* from April 12, 2018, was entered against Appellant and in favor of Bethel.  This appeal followed.[5]

_____

[4] Pennsylvania Rule of Civil Procedure 227.1(c)(1) requires a post-trial motion to be filed within ten days after entry of a non-jury verdict.  Pa.R.Civ.P. 227.1(c)(1).  "Pennsylvania courts have consistently held that trial court[s] have wide latitude in considering whether to address the merits of post-trial motions that are filed outside the 10-day period required by Rule 227.1." **D.L. Forrey & Assocs., Inc. v. Fuel City Truck Stop, Inc.**, 71 A.3d 915, 920 (Pa. Super. 2013).  "So long as the [trial] court has jurisdiction, it can exercise its equitable powers to hear untimely post-trial motions" because "the 10–day time period under Rule 227.1 is not a jurisdictional requirement, but merely a procedural rule[.]" **Id.**  It is well-settled, however, that the filing of a post-trial motion "is mandatory if a litigant wishes to preserve issues for appellate review." **Lenhart v. Cigna Cos.**, 824 A.2d 1193, 1196 (Pa. Super. 2003), *citing* **L.B. Foster Co. v. Lane Enters., Inc.**, 710 A.2d 55 (Pa. 1998).

Here, Appellant did not file a post-trial motion within ten days of the September 15, 2021 non-jury verdict.  Rather, on October 29, 2021, Appellant filed a request for permission to file a post-trial motion *nunc pro tunc*.  Bethel did not file an objection to Appellant's request, and, on November 3, 2021, the trial court granted Appellant permission to file a post-trial motion *nunc pro tunc* within ten days thereafter.  We note that November 13, 2021, ten days after the entry of the trial court order granting Appellant permission to file a post-trial motion *nunc pro tunc* within ten days, fell on Saturday.  Therefore, Appellant's post-trial motion was timely filed on Monday, November 15, 2021. **See** 1 Pa.C.S.A. § 1908 (stating that, whenever the last day of any period of time "shall fall on Saturday or Sunday, or on any day made a legal holiday by the laws of this Commonwealth or of the United States, such day shall be omitted from the computation").  Therefore, Appellant preserved his issues for Appellate review by first raising them in a post-trial motion. **Lenhart**, 824 A.2d at 1196.

[5] Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issues for our review:

1. Whether the [trial] court committed an error of law in finding that the alleged November 12, 2013 agreement was valid and enforceable and was not an amendment of[,] or modification to[,] the promissory note[] but[,] rather[,] a compromise agreement on enforcement of the [promissory] note, when[,] in fact[,] the terms of the promissory note provided that it could not be amended or modified unless in a writing signed by both parties[?]

2. Whether the [trial] court committed an abuse of discretion [or] error of law in finding that [Bethel] and Appellant entered into a subsequent contract on November 12, 2013[,] when the parties never had a meeting of the minds regarding the material terms of any alleged subsequent contract, specifically the amount of the payment, the date payment was due, and the date of performance[?]

3. [W]hether the [trial] court committed an error of law in finding that Appellant breached the alleged [November 12, 2013] agreement [] by failing to provide a signed confession of judgment [document] when the only evidence produced at trial regarding this issue was that: [(a)] Appellant wanted to review any confession of judgment [document] drafted by [Bethel's] attorney before signing any confession of judgment [document]; [(b)] after the parties entered into the alleged November 12, 2013 agreement, [Bethel] told his attorney to "hold off for now" regarding the draft document; [(c)] Appellant never received a draft [copy of the] confession of judgment [document]; and [(d)] the alleged November 12, 2013 agreement did not contain a term regarding the time for performance [in which] Appellant [was] to provide a signed confession of judgment [document?]

4. Whether the [trial] court committed an abuse of discretion [or] error of law in finding that Appellant's email dated November 12, 2013[,] at 10:19 a.m. [and] stating[,] "please proceed[,]" constituted an acceptance by Appellant of an offer allegedly made by [Bethel,] when[,] in fact[,] Appellant was asking [Bethel's] attorney to proceed with drafting a formal [confession of judgment] document for

Appellant to review and sign before he would agree to any
subsequent contract [or] judgment[?]

5. Whether the [trial] court committed an error of law in
awarding pre[-]judgment interest as of the date the
complaint was filed when the facts of this case and the law
do not support an award of pre[-]judgment interest?

Appellant's Brief at 5-6 (extraneous capitalization omitted).

Our standard and scope of review in an appeal from a judgment entered

on a non-jury verdict

is to determine whether the findings of the trial court are
supported by competent evidence and whether the trial court
committed error in any application of the law. The findings of fact
of the trial [court] must be given the same weight and effect on
appeal as the verdict of a jury. We consider the evidence in a light
most favorable to the verdict winner. We will reverse the trial
court only if its findings of fact are not supported by competent
evidence in the record or if its findings are premised on an error
of law.

*J.J. DeLuca, Co., Inc. v. Toll Naval Assocs.*, 56 A.3d 402, 410 (Pa. Super.

2012) (citation omitted).

Appellant's first, second, and fourth issues, *in toto*, challenge the trial

court's determination that the November 12, 2013 email correspondence

between the parties constituted a valid and enforceable contract. Appellant's

Brief at 20-38, 44-52. Appellant asserts, instead, that the November 12, 2013

exchange between the parties, even if found to give rise to an agreement,

amounted to an agreement to amend or modify the May 30, 2010 promissory

note. *Id.* at 18-20. Such an amendment or modification agreement,

Appellant contends, would be invalid and unenforceable because it was not

reduced to a writing signed by both parties as required by the terms of the promissory note. *Id.* at 20.

"A contract is formed when the parties to it 1) reach a mutual understanding, 2) exchange consideration, and 3) delineate the terms of their bargain with sufficient clarity." *Company Image Knitware, Ltd. v. Mothers Work, Inc.*, 909 A.2d 324, 330 (Pa. Super. 2006) (citation and original quotation marks omitted), *appeal denied*, 929 A.2d 645 (Pa. 2007).

> Where the existence of an informal contract is alleged, it is essential to the enforcement of such an informal contract that the minds of the parties should meet on all the terms[,] as well as the subject matter. If anything is left open for future negotiation, the informal paper cannot form the basis of a binding contract.

*GMH Assocs., Inc. v. Prudential Realty Group*, 752 A.2d 889, 900 (Pa. Super. 2000) (citation and quotation marks omitted), *appeal denied*, 795 A.2d 976 (Pa. 2000). "[I]n order for an enforceable agreement to exist, there must be a 'meeting of the minds,' whereby both parties mutually assent to the same thing, as evidenced by an offer and its acceptance." *Prieto Corp. v. Gambone Constr. Co.*, 100 A.3d 602, 609 (Pa. Super. 2014) (citation omitted).

"Where the parties have agreed on the essential terms of a contract, the fact that they intend to formalize their agreement in writing but have not yet done so does not prevent enforcement of such agreement." *Mazzella v. Koken*, 739 A.2d 531, 536 (Pa. 1999). "Even the inability of the parties to an oral agreement to reduce such agreement to writing after several attempts

does not necessarily preclude a finding that the oral agreement was enforceable." *Id.* In the absence of a written agreement, however, verbal discussions must give rise to a valid and binding oral agreement to become enforceable. *Mastroni-Mucker v Allstate Insur. Co.*, 976 A.2d 510, 522 (Pa. Super. 2009), *appeal denied*, 991 A.2d 313 (Pa. 2010).

It is well-established that "[written] agreements authorizing a confession of judgment [(also known as a warrant of attorney or a cognovit clause)] require a clearer manifestation of consent than do some other types of contract provisions." *Centric Bank v. Sciore*, 263 A.3d 31, 39-40 (Pa. Super. 2021), *citing Scott v. 1523 Walnut Corp.*, 447 A.2d 951 (Pa. Super. 1982). "The language contained in the [written] agreement must be specific enough to demonstrate that the signing party has consented to the entry of the judgment by confession." *Sciore*, 263 A.3d at 40. The requirements and governing standards that establish a valid written agreement authorizing a confession of judgment must be strictly construed "because a warrant of attorney to confess judgment confers such plenary powers on the donee in respect of the adjudication of his[ or her] own claims[.]" *Graystone Bank v. Grove Estates. LP*, 58 A.3d 1277, 1282 (Pa. Super 2012); *see also Dime Bank v. Andrews*, 115 A.3d 358, 368 (Pa. Super. 2015) (reiterating our Supreme Court's observation that a warrant of attorney authorizing a confession of judgment "is perhaps the most powerful and drastic document known to civil law").

Accordingly, **a Pennsylvania warrant of attorney must be signed**. And it will be construed strictly against the party to be benefited by it, rather than against the party having drafted it. A warrant of attorney to confess judgment must be self-sustaining and to be self-sustaining **the warrant must be in writing and signed by the person to be bound by it**. The requisite signature must bear a direct relation to the warrant of attorney and may not be implied.

*Graystone*, 58 A.3d at 1282 (citations, quotation marks, and brackets omitted; emphasis added). By way of an example, the *Graystone* Court noted that the requirements for a valid and enforceable warrant of attorney were satisfied by a "warrant of attorney appear[ing] conspicuously in all caps at the bottom of the penultimate page of the agreement and immediately preced[ing the signature,]" as compared to an invalid and unenforceable warrant of attorney "located either altogether outside the body of the agreement, too remote from the signature, or on pages subsequent to the signature." *Id.* (emphasis omitted).

In finding that Bethel and Appellant entered into an agreement, separate from, and subsequent to, the promissory note, the trial court explained:

On the basis of the email exchange between the parties on November 12, 2013, the [trial] court found that the parties had made an agreement that [a confessed] judgment would be entered against [Appellant] and in favor of [Bethel] for $100,000[.00]. Notably, the [trial] court did not find an agreement that [Appellant] would pay $100,000[.00] but[,] rather[,] that a [confessed] judgment would be entered in that amount. The parties' agreement further provided that interest on the [confessed] judgment would run from the date of judgment and that [Bethel] would forbear on enforcing the [confessed] judgment until June 1, 2015. Thus, the agreement did not require

[Appellant] to pay anything[] but[,] rather[,] to consent to entry of a [confessed] judgment. [Bethel] would then have his remedies for enforcement of the [confessed] judgment, provided that he would not seek such enforcement before June 1, 2015.

. . .

As early as October [] 2013, the parties were already discussing the possibility of a confession of judgment. On October 18, 2013, at 11:27 a.m., [Bethel's] attorney wrote to [Appellant,] "We can either agree on entry of a judgment in [Court of Common Pleas of Montgomery County, Pennsylvania] in favor of [Bethel and] against you for $125[,000.00] or we[ would] have to file a complaint and seek the $125[,000.00] plus interest from May 30, 2011[, as well as] counsel fees, which[, in total,] would run in the $145[,000.00] neighborhood." [Appellant] replied at 2:58[ p.m.] that [same day,] "I would certainly enter a confession of judgment, because all that does is solidify what I have been telling [Bethel] all along. However, we did in fact agree on the return of the [$100,000.00] investment, so I would be inclined to enter [the confessed judgment] for that amount." A few minutes later, at 3:18 p.m., [Bethel's] attorney replied[,] "[Bethel] will agree to a judgment of [$100,000.00] - I'll [send] you a document[, *via* email,] to look over and sign."

The record does not show any emails [having been sent by either party or by Bethel's counsel] between October 18[, 2013,] and November 11[, 2013]. On November 11, 2013, at 4:56 p.m., [Appellant] wrote to [Bethel] as follows:

> I would like to attach something known as a forbearance agreement to this which puts a time frame on this. As it stands, if I execute this it can be acted upon immediately and that certainly doesn't do us any good.
>
> So, if your lawyer would add the forbearance agreement with the outside date of [June 1, 2015,] I will execute and we can call it a day on this one.
>
> If not, this will have to go deep in to lawyer[-]land and that will rack up the costs for both of us.

The next morning, November 12, 2013, at 10:06 a.m., [Bethel] replied (with copy to his attorney)[,] "I am agreeable to adding the forbearance wording to the agreement in return for 6% interest applying to the note from the date of the judgment. Let

- 13 -

me know if this works and I will have my attorney incorporate the necessary changes." [Appellant] replied (with copy to [Bethel's] attorney) at 10:19 a.m.[,] "Please proceed."

In context, this email exchange reflected a classic creation of a contract through offer and acceptance. The October [2013] emails set the context for discussion[ - ]the entry of a [confessed] judgment against [Appellant] for $100,000[.00]. On November 11[, 2013,] and [November] 12, [2013, Appellant] proposed that the agreement include [a] forbearance [of] execution on the judgment until June 1, 2015. [Bethel] countered that he would agree to [a] forbearance in exchange for [an] agreement that interest at 6% [*per annum*] would [accrue] on the judgment from the date of entry. [Appellant] accepted the counteroffer. A contract was formed.

[Appellant] argues that there was no meeting of the minds on "the terms of the amount of the payment and the date that payment was due." As emphasized above, however, the agreement found by the [trial] court was not an agreement for any "payment." Instead, the agreement was for entry of a [confessed] judgment in a specified amount, $100,000[.00]. Because the agreement was not for payment of money, there was no agreement on "the date that payment was due." [Appellant] can argue that the evidence did not show an agreement only by mischaracterizing the agreement as one for payment of money rather than for entry of [a confessed] judgment.

Likewise, [Appellant's] argument [] - that the response "Please proceed" was not an acceptance by [Appellant] but merely a request to [Bethel's] attorney to prepare a document for his review - is not supported by the evidence. In the context of the back-and-forth between the parties, the [trial] court found by a preponderance of the evidence that "Please proceed" constituted an acceptance. By contrast, [Appellant's] alternative interpretation that "Please proceed" was simply an invitation to prepare a legal document for further review was not persuasive, for several reasons.

First, [Appellant's] testimony on the issue was inconsistent. In the context of [Bethel's] counteroffer to forbear on enforcement of the [confessed] judgment in exchange for the accrual of interest on the judgment, [Appellant] testified on direct examination as follow:

| [Bethel's Counsel:] | And did you agree to [Bethel's] counteroffer here to add 6% interest? |
|---|---|
| [Appellant:] | I'm not sure that I agreed at that particular time. |
| [Bethel's Counsel:] | So meaning that he would agree to add the forbearance wording to the agreement in return for 6[%] interest applying? |
| [Appellant:] | Yeah. |
| [Bethel's Counsel:] | Did you agree - |
| [Appellant:] | I agreed to that. |
| [Bethel's Counsel:] | Did you agree to that term? |
| [Appellant:] | Yes. |

On further examination, [Appellant] backed off of his testimony that he [] accepted [Bethel's] counteroffer, but the [trial] court found [Appellant's initial] testimony to be accurate. It is notable that [Appellant's] testimony did not include any explanation of his intention in stating "Please proceed."

[Appellant's] interpretation of "Please proceed" is further undermined by evidence that at the time of the email exchange on November 12, 2013, [Appellant] already had a proposed form of confession of judgment [agreement] for his review. [O]n October 18, 2013, after the parties [] settled on $100,000[.00] as the amount of the agreed judgment, [Bethel's] counsel stated, "I'll [send you, *via* email,] a document to look over and sign." It is true that the record does not show a subsequent email transmitting a proposed document. But[,] on November 11, 2013, [Appellant] emailed, "I would like to attach something known as a forbearance agreement to this . . . ." The most likely interpretation is that the "this" to which a forbearance agreement was to be "attached' was the [] confession of judgment [agreement] that [Bethel's] counsel [] said he would provide a month earlier. On the next day, [Bethel] replied, "I am agreeable to adding the forbearance wording to the agreement", reflecting that there was already an "agreement" document before the parties.

- 15 -

In light of the above evidence, the [trial] court considered that the meaning of "Please proceed" in [Appellant's] email was not "Please have your attorney prepare a document so that I can review it," but rather, "Please have your attorney revise the existing document to reflect the additional forbearance and interest terms that we have now agreed on." That acceptance of [Bethel's] counteroffer was sufficient to create a binding agreement between the parties, even if a revised written form of [confession of] judgment [agreement] had not yet been prepared. It is elementary that "so long as the parties agree on essential terms which they intend to be binding, a contract is formed even though they intend to adopt a formal document with additional terms at a later date."

Trial Court Opinion, 3/7/22, at 6, 8-12 (citations, footnotes, original brackets, emphasis, and extraneous capitalization omitted).

The record reveals that Appellant executed a promissory note dated May 30, 2010, in which Appellant promised to pay Bethel $125,000.00 on or before May 30, 2011.[6] N.T., 8/26/21, at Bethel's Exhibit 1. Appellant testified that he did not make payment as due pursuant to the promissory note. *Id.* at 15. Despite Appellant's failure to make the required payment, Bethel, in an email dated June 3, 2011, stated that he would "sit tight for while" in reference to his pursuit of payment. *Id.* at Bethel's Exhibit 2. In September 2013, Bethel inquired, *via email*, about the status of Appellant's business dealings and his ability to make payment on the promissory note. *Id.* at 35-36 and Bethel's Exhibits 5. In an attempt to resolve the outstanding debt, Bethel's counsel presented Appellant with an offer to, *inter alia*, enter into an agreement for a

---

[6] We note that only Bethel's exhibits numbered 1, 2, 5, 7, 9, and 10 - 13 were admitted as evidence at the non-jury trial. N.T., 8/26/21, at 55.

confessed judgment in the amount of the outstanding debt under the promissory note ($125,000.00). *Id.* at 37. Appellant agreed to the entry of a confessed judgment but presented Bethel with a counteroffer that the confessed judgment be entered for $100,000.00. *Id.* at 18. Bethel's counsel responded, *via* email, that Bethel "will agree to a judgment of [$100,000.00] – I'll [send you, *via* email,] a document to look over and sign." *Id.*

On November 11, 2013, in an email having the subject line "Agreement," Appellant sent Bethel the following message:

> I would like to attach something known as a forbearance agreement to **this** which puts a time frame on **this**. As it stands, if I execute **this** it can be acted upon immediately and that certainly doesn't do us any good.
>
> So, if your lawyer would add the forbearance agreement with the outside date of [June 1, 2015,] I will execute and we can call it a day on this one.

*Id.* at Bethel's Exhibit 7 (email dated November 11, 2013, 4:56 p.m.) (emphasis added).[7] Although Appellant did not specifically explain, in the email, what he referred to by the word "this," the record supports the trial court's finding that the use of the word "this" referred to a draft of the confession of judgment agreement as previously referenced by Bethel's

---

[7] We note that this email does not indicate that a draft of the confession of judgment agreement was attached to the email when it was sent to Appellant.

counsel in the email dated October 18, 2013, at 3:18 p.m.[8]  The trial court's inference is further supported by the use of the word "Agreement" in the subject line of the November 11, 2013 email.

The following day, Bethel responded to Appellant's email referencing the addition of the forbearance agreement, with a copy of his response sent to his counsel, as follows:

> I am agreeable to adding the forbearance wording to the agreement in return for 6% interest applying to the [promissory] note from the date of the [confessed] judgment.  Let me know if this works and I will have my attorney incorporate the necessary changes.

_____

[8] While we agree that the record supports a finding that the word "this" refers to a draft of the confession of judgment agreement previously referenced by Bethel's counsel, it is by no means clear that this inference is the only one supported by the facts.  As the trial court determined, the word "this" could refer to a draft agreement that included a confession of judgment clause.  It could also refer, however, to a conceptual agreement which the parties shared but which had not been drafted at this time.  In this connection, we note that neither a copy of the proposed confession of judgment agreement nor a copy of the proposed confession of judgment agreement that included the forbearance language were presented as evidence at the non-jury trial.  So, while the parties, at trial, appear to refer to an existing confession of judgment agreement (or circulating draft) when using the definitive pronoun "this," it is also possible – in the absence of documentary evidence – that the parties referred to a shared conceptual draft which had been discussed but not yet reduced to written form.  As we explain _infra_, in either scenario (_i.e._, the failure to introduce an existing confession of judgment agreement signed by Appellant or to establish the nonexistence of a written confession of judgment agreement) no enforceable agreement can be found on the record developed in this case.

*Id.* (email dated November 12, 2013, 10:06 a.m.). Appellant replied to both Bethel and Bethel's counsel, *via* email, "Please proceed." *Id.* at Bethel's Exhibit 9 (email dated November 12, 2013, 10:19 a.m.).

On November 14, 2013, in an email directed to Bethel but without a copy sent to Bethel's counsel, Appellant inquired,

> Are you sure you really need to enter this judgment? I have never wavered on my pledge to you and this is still the same agreement we have, it just adds a blemish on my public record. I stood up for you and guided you in the right direction out of the gates, or this wouldn't even be available for discussion. I took care of you as a friend. I'll only ask once, can we [forgo] this exercise and still rely on the covenant we've agreed to?

*Id.* at Bethel's Exhibit 7 (email dated November 14, 2013, 9:28 a.m.) (paragraph formatting omitted). Bethel replied,

> When we initially spoke about doing business together, you came and picked me up, took me to your office, reviewed the [real estate development] plans[,] and took me to the proposed site. Since you advised that you couldn't meet the obligation by the agreed date, you have given me next to no information. What little I got was in response to my inquires on a quarterly basis. When I asked for details recently, you said I would get them and I didn't. I followed up and you said you forgot. You then still didn't give me the details. All I asked for was a copy of the townhouse listing. How hard is that? [Although] I know you, I really don't know you all that well – at least from a business standpoint. What am I supposed to do when a person who owes me significant dollars doesn't appear interested in giving me the slightest bit of information? If the roles were reversed, I'd have you with me every step of the way just to make sure you knew what was going on and could see the effort I was making to get you paid. I think I have been more than fair along the way and have kept our business together private. Even if you give me [$100,000.00,] I will have lost money on the deal – no [$25,000.00] return as well as normal interest on the

> [$100,000.00] or the [$125,000.00] post original due date as stipulated in the agreement.
>
> Notwithstanding the above, I would consider not filing the judgment if you can provide me a full report on the projects in place and agree to continue updating me on set dates as we move forward.

*Id.* (email dated November 14, 2013, 10:02 a.m.). Appellant agreed, stating "[l]et's stipulate that we have monthly updates." *Id.* (email dated November 14, 2013, 10:16 a.m.). After the parties agreed that Appellant would provide the first update on December 15, 2013, Bethel informed Appellant, "I will defer decision on filing judgment until after the December 15[, 2013 update] and I have a clear understanding of what is going on." *Id.* (email dated November 15, 2013, 10:44 a.m.).

On November 29, 2013, Bethel's counsel, with a copy sent to Bethel, sent Appellant an email asking, "Can you let me know the status of the [confession of] judgment document?" *Id.* at Bethel's Exhibit 9 (email dated November 29, 2013, 12:41 p.m.). Bethel responded to both his counsel and Appellant, "I have agreed with [Appellant] to hold off for now and contingent upon him providing me monthly updates regarding project progress." *Id.* (email dated November 29, 2013, 12:49 p.m.). Appellant provided Bethel with an update in December 2013, and, in January 2014, Bethel suggested that the updates be provided quarterly. *Id.* at Bethel's Exhibits 10-13. Thereafter, Appellant failed to provide Bethel with periodic updates on his business projects and, in April 2018, Bethel commenced an action against Appellant for breach of contract.

The record supports the trial court's finding that, in October 2013, in an effort to obtain repayment of the monies due under the terms of the promissory note and to avoid prolonged litigation of the matter, Bethel offered to forgo attempts to collect under the promissory note in exchange for Appellant agreeing to enter into a confession of judgment agreement for judgment in the amount of $125,000.00. Appellant agreed to enter into a confession of judgment agreement but counteroffered that the judgment should be $100,000.00. Bethel accepted Appellant's counteroffer of a $100,000.00 confessed judgment, and Appellant allegedly received a draft of the confession of judgment agreement.

In November 2013, Appellant requested modification of the confession of judgment agreement to include forbearance language in which Bethel would agree not to commence an action to collect on the judgment, once entered, until June 1, 2015. Bethel agreed to the forbearance language, but only if Appellant agreed to an accrual of interest on the confessed judgment at a rate of six *per centum per annum* from the time the judgment was entered. Appellant accepted Bethel's counteroffer and a revised draft of a confession of judgment agreement was presumably provided to Appellant.[9] Appellant did not execute this agreement, as demonstrated by Bethel's counsel's subsequent email inquiry directed to Appellant. Rather, counsel's inquiry sought the status of the written confession of judgment agreement. On

_____

[9] We reiterate that the record does not contain a written draft of the confession of judgment agreement signed by Appellant.

November 29, 2013, Bethel, in response to his counsel's inquiry of Appellant, responded, "I have agreed to hold off for now and contingent upon [Appellant] providing updates regarding project progress." *Id.* at Bethel's Exhibit 9 (email dated November 29, 2013, 12:49 P.M.). As a result of Bethel agreeing to "hold off for now," the revised confession of judgment agreement was not executed by the parties.

We concur with the trial court that the parties entered into an oral agreement, *via* email correspondence, by which Appellant agreed to execute a confession of judgment agreement the terms of which included: (1) entry of a confessed judgment in favor of Bethel and against Appellant in the amount of $100,000.00; (2) the accrual of interest at a rate of six *per centum per annum* beginning on the date of entry of the confessed judgment; and (3) Bethel would forgo attempts to collect on the confessed judgment until June 1, 2015. The trial court erred as a matter of law, however, in finding that the oral agreement to execute a confession of judgment agreement was an enforceable contract such that a confessed judgment in the amount of $100,000.00 plus interest could be entered against Appellant for his failure to execute the revised confession of judgment agreement.[10]

---

[10] We concur with the trial court that the oral agreement was, *inter alia*, an agreement for entry of a confessed judgment and not an oral agreement for payment of a sum certain plus interest. *See* Trial Court Opinion, 3/7/22, at 6.

It is well-established, as the trial court noted, that "the inability of the parties to an oral agreement to reduce such agreement to writing after several attempts does not necessarily preclude a finding that the oral agreement was enforceable." *Mazzella*, 739 A.2d at 536, *citing* *Woodbridge v. Hall*, 76 A.2d 205, 206 (Pa. 1950); *see also Mastroni-Mucker*, 976 A.2d at 522; Trial Court Opinion, 3/7/22, at 12, *citing* *Courier Times, Inc. v. United Feature Syndicate, Inc.*, 445 A.2d 1288, 1295 (Pa. Super. 1982). Such is not the case, however, when the oral agreement, which has not been reduced to a signed written agreement, involves a confession of judgment agreement, particularly in view of the heightened formalities Pennsylvania law imposes upon confession of judgment agreements. *See Graystone*, 58 A.3d at 1282. Even if the parties orally contract to enter into a confession of judgment agreement, we cannot know – in the absence of documentary proof reflecting a fully executed written agreement – whether the confession of judgment agreement meets the applicable formalities imposed under Pennsylvania law. Thus, if we were to permit entry of judgment by confession based upon an oral agreement, as in the case *sub judice*, we would disavow the long-standing principle that confession of judgment agreements **must be in writing signed by the person to be bound by it and must be self-sustaining with the requisite signature bearing a direct relation to the agreement to confess judgment**. *Id.*; *see also Egyptian Sands Real Estate, Inc. v. Polony*, 294 A.2d 799, 803 (Pa. Super. 1972). Therefore, because a written agreement to confess judgment was not executed by Appellant, Bethel was

not permitted, as a matter of law, to obtain a confessed judgment based upon the enforcement of an oral agreement to execute a written confession of judgment agreement.[11]

Consequently, we are constrained to vacate the January 5, 2022 judgment. We are further constrained to vacate the November 3, 2021 Order that amended the non-jury verdict and awarded pre-judgment interest and to reverse the September 15, 2021 non-jury verdict finding judgment in favor of Bethel and against Appellant in the amount of $100,000.00.[12]

Judgment vacated. November 3, 2021 Order vacated. September 15, 2021 non-jury verdict reversed. Case remanded. Jurisdiction relinquished.

---

[11] Our decision is further supported by the fact that, although the parties agreed to execute a written confession of judgment agreement that included a forbearance agreement, when Appellant was asked about the status of his execution of the written agreement, Bethel replied to both his counsel and Appellant that he agreed "to hold off for now" on the parties' agreement.

[12] In light of our disposition of this matter, we do not address Appellant's remaining issues. We note, however, that the November 2013 oral agreement to enter into a confession of judgment agreement containing forbearance language was not a modification or amendment of the promissory note. Moreover, even if the oral agreement was construed as a modification or amendment of the promissory note, the oral agreement would not be enforceable for the reasons set forth herein and because the promissory note required an amendment or modification agreement to be in writing and signed by the parties.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/30/2022