J-A22042-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| M&T BANK | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARK HALLOWELL | : | No. 2995 EDA 2024 |

Appeal from the Order Entered September 24, 2024
In the Court of Common Pleas of Delaware County Civil Division at
No(s): CV-2023-009880

| | | |
|---|---|---|
| M&T BANK | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARK HALLOWELL | : | |
| | : | |
| Appellant | : | No. 2825 EDA 2024 |

Appeal from the Order Entered September 24, 2024
In the Court of Common Pleas of Delaware County Civil Division at
No(s): CV-2023-009880

BEFORE:   LAZARUS, P.J., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:          **FILED DECEMBER 29, 2025**

Mark Hallowell ("Hallowell") appeals from the September 24, 2024, order that denied its petition to strike or, alternatively, open a money judgment entered by confession in favor of Plaintiff/Appellee lender M&T Bank and against Defendants/Appellants Shelbourne Healthcare Development

_____

[*] Former Justice specially assigned to the Superior Court.

Group, LLC, and its three individual guarantors, one of whom is Hallowell. Herein, Hallowell contends that the trial court erred by denying both Defendants/Appellants' petition to strike the confessed judgment as an invalid court record due to facial defects and their alternate petition to open the confessed judgment upon alleged meritorious defenses to the confessed judgment.

M&T Bank cross-appeals from the order striking its Attorney's commission and not otherwise including an award of attorney fees in the Judgment as amended. After careful consideration, we affirm the order that denied Defendants/Appellants' petition to strike or, in the alternative, open the judgment by confession, but we vacate the order that denied M&T Bank's attorney fees and remand for further consideration consistent with this decision.

The present matter arises from a 2019 commercial loan agreement between M&T Bank and Shelbourne Healthcare. N.T., 7/16/2024, at 134. The agreement took the form of a demand note and contained, among other provisions: Paragraph 1.5, "Demand," which described a "demand facility" enabling M&T to demand, in its sole discretion, full repayment of the loan at any time whether or not any event of default has occurred under the agreement or any loan document; Paragraph 1.6, "Clean-up," a provision which established a line of credit with conditions requiring, *inter alia*, repayment of all outstanding amounts at certain points in time, particularly when the borrower receives proceeds from selling an asset; and, Paragraph

5.1, "Default," which set forth twelve subsections each describing a different event of "default." Included among the events of default was the scenario described in subsection (l), whereby relevant industry conditions or borrower's financial circumstances may cause Bank to believe, in its sole discretion, that borrower's ability to repay the loan timely and fully has been impaired.[1] N.T. at 135-38.

On or about June 8, 2021, Shelbourne Healthcare, in exchange for consideration received, executed and delivered a third iteration of the loan agreement ("Third Amended and Restated Revolving Demand Note") in the principal sum of $3,200,000.00 to M&T. Guaranteeing Shelbourne Healthcare in this transaction were Guarantors Hallowell, Joseph Fox, and James Kane.

_____

[1] Section 5 of the loan agreement provides:

**5. DEFAULT**

5.1 Default. "Event of Default" shall mean the occurrence of one or more of any of the following events:

. . .

(l) the occurrence of such a change in the condition of affairs (financial or otherwise) of the Borrower or any guarantor of the Obligations, or the occurrence of any other event or circumstance, such that the Bank, in its sole discretion, deems that it is insecure or that the prospects for timely or full payment or performance of any obligation of the Borrower or any guarantor of the Obligations to the Bank has been or may be impaired.

Loan Agreement, 7/10/2019, at 9-10.

Like the prior demand notes, the Third Amended Demand Note provided that it was a "demand facility" and included Borrower's promise to pay, on demand, the outstanding principal amount of the loan, plus interest, fees, and costs including Attorney's fees as follows, in relevant part:

**2.     PAYMENT OF PRINCIPAL, INTEREST AND EXPENSES.**

> **a. Promise to Pay.**  For value received and intending to be legally bound, Borrower promises to pay to the order of the Bank, ON DEMAND, the Maximum Principal Amount or the Outstanding Principal Amount, if less, plus interest as set forth below and all fees and costs (including without limitation the Bank's Attorney's fees and disbursements, whether for internal or outside counsel) incurs in order to collect any amount due under this Note, to negotiate or document a workout or restructuring, or to preserve its rights or realize upon any guaranty or other security for the payment of this Note.
>
> **. . .**
>
> **d. Demand Facility.**  This is a pay-on-demand Note and all Loans hereunder are made at the Bank's discretion and shall  become immediately due and payable upon demand by the Bank; . . . .   Borrower hereby waives protest, presentment and notice of any kind in connection with this Note.  Absent demand for payment in full, interest shall be due and payable monthly, as invoiced by the Bank.

Third Amended and Restated Revolving Demand Note, 6/8/21, at p. 1, Section 2 (a) and (d).  Furthermore, Section 4. "Conversion Upon Default," recognizes the occurrence of a default when, among other events, a borrower fails to pay the indebtedness due under the Note, "whether by demand or otherwise[.]" *Id*. at p.3, Section 4.

- 4 -

Against this backdrop, the trial court aptly summarizes the ensuing procedural history, as follows:

[M&T Bank filed a] Complaint in Confession of Judgment [] on November 20, 2023. The docket reveals that on November 29, 2023, a money judgment was entered by confession against all Defendants and in favor of Plaintiff Bank, in the amounts set forth therein ("Judgment"), upon the filed Complaint in Confession of Judgment and all exhibits thereto ("Complaint").

On January 4, 2024, Defendants filed a Petition to Open/Strike the [Confessed] Judgment, and Plaintiff Bank filed a Response with New Matter to the Petition to Open/Strike on March 21, 2024. A Hearing on the Petitions [was] scheduled for April 30, 2024. Defendants filed Replies to the New Matter on April 10, 2024, as well as Emergency Motions on April 11, 2024. The Emergency Motions were to Strike the alleged untimely Response of Plaintiff Bank to the Petition to Open/Strike, and these Motions were Answered by Plaintiff Bank on April 24, 2024.

Following a Hearing and Argument on the Emergency Motions filed by Defendants, The Honorable Spiros E. Angelos filed an Order on the Emergency Petition to Strike and Denied said Motions, providing limited exchange of Discovery and scheduling a Hearing on July 16, 2024.

[Judge Angelos] held a Hearing on the remaining outstanding Defendants' Petition to Open/Strike on July 16, 2024, took the matter under advisement, required Proposed Findings of Fact and Conclusions of Law to be submitted, and thereafter issued an Order on September 24, 2024, Denying said [Petition and M&T Bank's petition for Attorney's fees]. Thereafter, both Plaintiff Bank and all Defendants filed Cross Appeals in this matter. The Court issued separate Orders requiring Concise Statements of Matters Complained of on Appeal from the appealing parties.

. . . .

[The trial court sets forth the pertinent, undisputed facts that a] a money judgment was entered by confession against Defendants and in favor of Plaintiff Bank, following a Complaint in Confession of Judgment and all exhibits thereto ("Complaint") that was filed

- 5 -

on the same day by Plaintiff Bank. The Complaint in Confession of Judgment was issued pursuant to the authority contained in a warrant of attorney and term for confession of judgment appearing in that certain Unlimited Guaranty ("Guaranty"), executed by Defendants and delivered to Plaintiff Bank on or about July 10, 2019, in connection with a business loan to Defendant [borrower] Shelbourne Healthcare Development Group, LLC ("Defendant Shelbourne"), pursuant to which Defendant[] [Guarantors] agreed to absolutely and unconditionally guarantee and become surety to Plaintiff Bank for all amounts owed to Plaintiff Bank by Defendant Shelbourne.

[The Trial Court] determined that the Guaranty authorizes confession of judgment against Defendants [Guarantors] for all amounts due under the Guaranty plus continuing interest, costs of the proceeding and an Attorney's commission of the greater of five percent (5%) of such sums or $10,000.00, plus the cost of any legal proceedings. Further, the Guaranty provides that the "liability of [Defendants Guarantors] is direct and unconditional and due immediately upon default of [Defendant Shelbourne] without demand or notice and without requiring the Bank first to resort to any other right, remedy or security."

The Guaranty also provides that the "Bank's books and records showing the account between the Bank and the Borrower shall be admissible in any action or proceeding, shall be binding upon the Guarantor for the purpose of establishing the items set forth and shall constitute conclusive proof thereof." Additionally, the Guaranty provides, in pertinent part, that "there are no preconditions to the effectiveness of this Guaranty and that no provision hereof may be altered, amended, waived, canceled or modified, except by a written instrument executed, sealed and acknowledged by the Bank's duly authorized officer." The Guaranty also provides that, "[Defendant] waives: notice of acceptance hereof, presentment and protest of any instrument and notice thereof, notice of default and all other notices to which [Defendants] might otherwise be entitled." The Guaranty has never been amended in writing.

The [trial court] determined that Defendants [Guarantors] have failed to pay all amounts owing from Defendant Shelbourne after such amounts became due, as required under the Guaranty. **As a result of Defendant Shelbourne's failure to pay all amounts owing that became due, Plaintiff Bank provided,**

**on September 21, 2023, notice (the "Notice") simultaneously to Defendant Shelbourne and to each of the named guarantors of its pertinent obligations, which was all Defendants in the case *sub judice*.**

The Notice specifically states that the "purpose of this letter is to notify you that the Bank hereby demands payment of the Loan in full within thirty (30) days of the date of this letter," or before October 21, 2023. The Notice also specifically states that before "making payment you should contact the bank for an updated pay-off amount to include principal and accrued interest, late charges, attorney fees and other fees and costs."

**Defendants admitted and confirmed that neither Defendant Shelbourne nor any of the named Guarantors made payment of the amounts due under the Loan by October 21, 2023, despite receiving the Notice from Plaintiff Bank.** Moreover, Defendants admitted in the Petition to Open/Strike Judgment that Defendant Shelbourne was "not in a position to repay the loan at the time it was called, but had more than sufficient assets and would be in a position to do so following the passage of just a few months."

At the [Evidentiary] Hearing on July 16, 2024, Defendants admitted that Defendant Shelbourne is still not able to repay the loan and that it is hoping to be able to do so by the end of 2024, or perhaps in summer of 2025. Defendants further admit that neither Defendant Shelbourne nor any of the other named Guarantors made interest payments on the account after Plaintiff Bank made demand for payment under the Note.

**Based upon the testimony, argument, and evidence presented at the July 16, 2024, Hearing on the Petition to Open/Strike Judgment, [the trial court] determined that Defendant Shelbourne defaulted on its obligations owing monies to Plaintiff Bank by failing or refusing to remit payment of the amounts due under the Loan on or before October 21, 2023, despite receiving the Notice. The [trial court] further found that the Judgment was therefore properly entered against Defendants pursuant to the authority contained in the Guaranty.**

**[The trial court] also determined that as of October 23, 2023, there remained due and owing from the Borrower an**

**unpaid balance as follows: Principal balance in the amount of one million six hundred ninety thousand two hundred and fifty dollars ($1,690,250[.00]); Interest through October 22, 2023, at a rate of six hundred twenty dollars and sixty one cents ($621.61) per diem for a total amount of interest of five thousand twenty nine dollars and eleven [cents] ($5,029.11); with deferred interest totaling three thousand fifty one dollars and eighty four cents ($3,051.84). Therefore, the total amount of judgment that was issued against Defendants for the Confession of Judgment sought by Plaintiff Bank was a total of one million six hundred ninety-eight thousand three hundred twenty dollars and sixty one cents ($621.61) per diem, as well as continuing late charges and costs of this lawsuit.**

TCO, 12/11/2024, at. (emphasis added).

Appellants, borrower Shelbourne Healthcare and guarantors Hallowell, Fox, and Kane, are represented by the same counsel and have filed identical appellate briefs that present the following interrelated issues for this Court's consideration:

1. Did the Trial Court commit an error of law and/or abuse its discretion in denying the Petition to Strike the Judgment when Plaintiff/Appellee's Complaint was required to, but failed, to [sic] aver facts establishing a default on the part of Defendant[s]/Appellant[s] [?]

2. Did the Trial Court commit an error of law and/or abuse its discretion when it failed to open the Judgment where Defendants/Appellants presented sufficient evidence of [their] meritorious defense that Plaintiff/Appellee had breached the implied covenant of good faith and fair dealing[?]

3. Did the Trial Court commit an error of law and/or abuse its discretion when it failed to open the Judgment where Defendants/Appellants presented sufficient evidence of their meritorious defense that the alleged debt was not yet due and payable[?]

4. Did the Trial Court commit an error of law and/or abuse its discretion when it failed to open the Judgment where Defendants/Appellants presented sufficient evidence of its meritorious defense that Plaintiff/Appell[ee's] calculations of the sum due were incorrect, including because Plaintiff/Appell[ee's] calculations included significant sums of premature default interest[?]

5. Did the Trial Court commit an error of law and/or abuse its discretion when it failed to view the evidence presented in the light most favorable to Defendants/Appell[ants] and by failing to draw all inferences in favor of Defendants/Appell[ants], and by, instead, accepting, rather than rejecting, the contrary evidence presented by Plaintiff/Appellee and by drawing inferences in its favor[?]

6. Did the Trial Court commit an error of law and/or abuse its discretion by requiring Defendant/Appellant to prove at a hearing that it would ultimately prevail at the trial in this matter, rather than simply establish that it possesses a meritorious defense capable of being proven at a trial in due course following discovery[?]

Brief of Appellant at 4-5.

A confessed judgment is a valid court record and "has all the qualities of a judgment on a verdict." *Neducsin v. Caplan*, 121 A.3d 498, 505 (Pa. Super. 2015). A petition to strike a confessed judgment and a petition to open a confessed judgment are distinct remedies; they are not interchangeable." *Id.* at 504 (internal citation omitted). As such, we address the trial court's dispositions of Appellants' petition to strike and petition to open in turn.

Appellants' first issue asserts that the trial court erroneously, and in an abuse of its discretion, denied their petition to strike what they argued was a

defective confessed judgment that failed to aver facts establishing Shelbourne Healthcare's and Guarantors' default. We discern no merit to this issue.

A petition to strike a judgment is a common law proceeding that focuses on defects or irregularities in the record that affect the validity of the judgment and entitles the petitioner to relief as a matter of law. *Id*. A petition to strike operates as a demurrer to the record of the confessed judgment. *Id*.

"An appeal regarding a petition to strike a default judgment implicates the Pennsylvania Rules of Civil Procedure." *Bank of N.Y. Mellon v. Johnson*, 121 A.3d 1056, 1059 (Pa. Super. 2015) (citation omitted). Because such a claim raises a question of law, "our standard of review is *de novo* and our scope of review is plenary." *Oswald v. WB Public Square Assocs., LLC*, 80 A.3d 790, 793 (Pa. Super. 2013).

> A petition to strike is not a chance to review the merits of the allegations of a complaint. Rather, a petition to strike is aimed at defects that affect the validity of the judgment and that entitle the petitioner, as a matter of law, to relief. A fatal defect on the face of the record denies the prothonotary the authority to enter judgment.
>
> When a prothonotary enters judgment without authority, that judgment is *void ab initio.* When deciding if there are fatal defects on the face of the record for the purposes of a petition to strike a [confessed] judgment, a court may only look at what was in the record when the judgment was entered.

*Johnson*, 121 A.3d at 1060 (citation and some brackets omitted; emphasis added).

Further,

> [i]n considering the merits of a petition to strike, the court will be limited to a review of only the record as filed by the party in whose favor the warrant is given, *i.e.*, the complaint and the documents which contain confession of judgment clauses. Matters *dehors* the record filed by the party in whose favor the warrant is given will not be considered.

***Midwest Fin. Acceptance Corp. v. Lopez***, 78 A.3d 614, 623 (Pa. Super. 2013) (citation omitted; emphasis added).

Pursuant to Pa.R.Civ.P. 2952(a)(6), a complaint for a confession of judgment "shall contain . . . if the judgment may be entered only after a default or the occurrence of a condition precedent, an averment of the default or of the occurrence of the condition precedent." Pa.R.C.P. 2952(a)(6). Unlike the requirements set forth in Pa.R.C.P. 1019(b) regarding an averment of fraud or mistake, "default need not be averred with particularity." ***Obara Realty Group, LLC v. Atlas Real Estate Investments, LLC***, 279 A.3d 614, 618 (Pa. Super. 2022) (citing ***Stahl Oil Co., Inc. v. Helsel***, 860 A.2d 508, 513 (Pa Super. 2004)).

Instantly, M&T Bank stated in its November 6, 2023, Complaint for Confession of Judgment against borrower Shelbourne Healthcare that, *inter alia*, Shelbourne Healthcare had defaulted in its obligations owing under the contract as of September 21, 2023, and had not repaid the Demand Note as it was required to do under the contract and, furthermore, that M&T Bank was empowered under the Demand Note to demand payment of the note in full at any time. Specifically, the Complaint for Confession of Judgment stated:

> 3.   On or about June 8, 2021, Defendant [Shelbourne Healthcare] executed and delivered to M&T a Third Amended and

Restated Revolving Demand Note (the "Note") in the original principal sum of $3,200,000.00. A true and correct copy of the Note, along with Disclosure for Confession of Judgment, is attached hereto as Exhibit "A" and incorporated by reference.

. . .

6. "Defendant [Shelbourne Healthcare] defaulted in its obligations owing to M&T and was noticed by M&T of such default by letter dated September 21, 2023 (the "Notice").

7. Pursuant to the Note, M&T is able to demand payment of the Note in full at any time.

8. The Note authorizes confession of judgment against Defendant for the entire indebtedness under the Note including principal, accrued interest, and all amounts due under the Note, together with costs of suit and an attorney's commission of the greater of ten percent (10%) and interest of $1,000 added as a reasonable attorney's fee.

9. As of October 23, 2023, the amount due on the Note is as follows: [$1,690,250.00 principal, $8,080.95 in current and deferred interest, and $169,527.91 in Attorney's fees, for a total of $1,867,858.86] plus continuing interest after October 23, 2023, at a rate of $621.61 *per diem*, continuing late charges and costs of suit.

. . .

WHEREFORE, Plaintiff, M&T Bank, demands judgment against Defendant, Shelbourne Healthcare. . . in the total amount of $1,867,858.86 . . . .

Complaint for Confession of Judgment, 11/6/2023, at 1-3.

Reading M&T Bank's Complaint for Confession of Judgment, the trial court took judicial notice of the averments specifying terms of the Note and asserting the default that gave rise to M&T Bank's contractual right to call the Note, namely, "[Shelbourne Healthcare] defaulted in its obligations owing to

M&T and was noticed by M&T of such default by letter dated September 21, 2023." Complaint at 2. Attached and made part of the Complaint for Confession of Judgment was the Third Amended and Restated Revolving Demand Note, which, as discussed *supra*, plainly provides that all loans are immediately due and payable upon demand by the M&T Bank, and that a failure to pay the indebtedness when due, in whole or in part, constitutes a default.

Additionally, M&T Bank stated in each of its Complaints for Confession of Judgment against Guarantors that, in connection with the business loan provided by it to borrower Shelbourne Healthcare, each Guarantor executed and delivered to M&T an unlimited guaranty by which each became surety to M&T Bank for all amounts owed to the M&T Bank by Shelbourne Healthcare. The Complaints averred accurately that there "remained due and owing from the Borrower [Shelbourne Healthcare] an unpaid balance [of principal, interest, and Attorney's fees totaling] $1,783,094.90, Guarantors have failed to pay all amounts owing from the Borrower after such amounts became due, and M&T Bank has demanded payment of the amounts owed from Guarantors under their Guarantees, but Guarantors have failed and/or refused to pay the same." Complaint for Confession of Judgment against Guarantors, 11/20/23, at 1-2.

Our review of the Complaints for Confession of Judgment aligns with the trial court's Rule 1925(a) opinion that the only reasonable inference arising

from the Complaint passages in question was that M&T Bank reasonably deemed Shelbourne Healthcare in default of its payment obligations as set forth by the terms of the Demand Note, as M&T Bank had exercised its rights thereunder to demand repayment of all loans and filed confession of judgment against Shelbourne Healthcare for the entire indebtedness when repayment was not forthcoming.

Therefore, we conclude Defendant/Appellants Shelbourne Healthcare and Guarantors' shared position that M&T's "averment did not actually allege what the default was, and thus is not an averment of *the* default," is, at best, unavailing given both the record and applicable caselaw. ***See Obara Realty, LLC***., ***supra***. Accordingly, Shelbourne Healthcare and Defendant Guarantors may not prevail on their first issue challenging the order denying its petition to strike the confessed judgment.

In Appellants' next three issues, they contend the trial court erroneously and through an abuse of discretion rejected the "meritorious defenses" they offered in support of their Petition to Open Bank's Complaint for Confession of Judgment. Specifically, they argue they presented sufficient evidence that M&T Bank breached the implied covenant of good faith and dealing, failed to show the alleged debt was due and payable, and miscalculated the outstanding loan amount. This Court reviews an order denying a petition to open a confessed judgment for an abuse of discretion. ***See Neducsin***, 121 A.3d at 506.

A petition to open a confessed judgment is an appeal to the equitable powers of the court. *See SDO Fund II D32, LLC v. Donahue*, 234 A.3d 738, 742 (Pa. Super. 2020). "Traditionally, a confessed judgment will be opened in only a limited number of circumstances." *Iron Worker's Sav. and Loan Ass'n v. IWS, Inc.*, 622 A.2d 367, 370 (Pa. Super. 1993). A trial court may open a confessed judgment only when the petitioner: (1) acts promptly; (2) alleges a meritorious defense; and (3) produces sufficient evidence in support of the defense to submit the issue to a jury. *See id*.

Our Court has observed:

A meritorious defense is one upon which relief could be afforded if proven at trial.

Pa.R.Civ.P. 2959(e) sets forth the standard by which a court determines whether a moving party has properly averred a meritorious defense. If evidence is produced which in a jury trial would require the issues to be submitted to the jury the court shall open the judgment. Furthermore, the court must view the evidence presented in the light most favorable to the moving party, while rejecting contrary evidence of the non-moving party. The petitioner need not produce evidence proving that if the judgment is opened, the petitioner will prevail. Moreover, we must accept as true the petitioner's evidence and all reasonable and proper inferences flowing therefrom.

In other words, a judgment of confession will be opened if a petitioner seeking relief therefrom produces evidence which in a jury trial would require issues to be submitted to a jury. The standard of sufficiency here is similar to the standard for a directed verdict, in that we must view the facts most favorably to the moving party, we must accept as true all the evidence and proper inferences in support of the defense raised, and we must reject all adverse allegations. The trial court can make this decision as a matter of law when the defense presented is without

- 15 -

adequate substance, because contract construction and interpretation is generally a question of law for the court to decide.

*Neducsin*, 121 A.3d at 506-07 (citations and internal quotation marks omitted). It is the petitioner's burden to "offer clear, direct, precise and believable evidence of a meritorious defense, sufficient to raise a jury question." *Stahl Oil Co., Inc. v. Helsel*, 860 A.2d 508, 512 (Pa. Super. 2004) (internal citation omitted). "When determining a petition to open a judgment, matters *dehors* the record filed by the party in whose favor the warrant is given, *i.e.*, testimony, depositions, admissions, and other evidence, may be considered by the court." *Graystone Bank v. Grove Estates, LP*, 58 A.3d 1277, 1282 (Pa. Super. 2012).

Here, the trial court reviewed Appellants' defenses and determined they were belied by the clear and specific terms of the demand note itself. We adopt the trial court's rationale in this respect as our own. With specific reference to Appellants' argument that implied obligations of good faith and fair dealings are relevant to the present matter, we would note there is no dispute that the type of loan facility offered to and accepted by Shelbourne Healthcare and Guarantors was a "demand note" or that a bank in M&T Bank's

position pursuant to such a demand note had the right to call a loan at any time, as M&T Bank did in this case.[2,3]

---

[2] Appellants complain that the trial court abused its discretion by considering M&T Bank's "contrary evidence" confirming that the current, operative iteration of the Bank's demand note, the Third Amended and Restated Revolving Demand Note in the sum of $3,200,000.00, was due and owing upon Bank's demand. N.T. 128-31. Specifically, Bank presented at the evidentiary hearing its Senior Vice President/Senior Relationship Manager in the Healthcare Group, Virginia Stolzenthaler, who testified that the type of loan vehicle both initially extended to Shelbourne Healthcare in 2019 and currently in force was a "demand note" and that Stolzenthaler explained that a demand note "has no principal – it has no maturity date. The bank has the right to call that loan at any point in time. . . . We ask for payment and we're supposed to get repaid." N.T. at 128. Because this testimony merely corroborates the uncontested fact that the loan document in question is a demand note and Appellant exercised its option thereunder to demand immediate payment-in-full of all loans, we reject Appellants' argument.

[3] In addition to asserting M&T Bank's right to call the loan at any time pursuant to the demand note, Senior Vice President Stolzenthaler testified at the hearing, subject to Appellants' counsel's zealous cross-examination, that the record supported M&T Bank's assessment that the Shelbourne loan was a "troubled loan" because of "tremendous" negative economic pressures bearing upon the healthcare and senior housing industries, generally, and upon the Shelbourne asset and its ability to repay the debt specifically. N.T. at 132, 133. She opined, therefore, that the Bank did not exercise its rights under the Demand Note prematurely, as she addressed the record showing that Bank initiated discussions with Shelbourne Healthcare about the option of entering into a forbearance agreement, as other borrowers were doing, to give them time to repay the loan, but Shelbourne Healthcare declined.

Therefore, while we rely on the terms of the demand note to discern no merit to Appellants' charge that Bank breached an implied covenant of good faith and fair dealing by exercising its rights under the note to demand full payment, we acknowledge that M&T Bank's presentation of Ms. Stolzenthaler's testimony, which was challenged by Appellant's counsel, likewise supported the trial court's rejection of Appellants' good faith and fair dealing claim.

The trial court observed that M&T Bank provided in its September 21, 2023, Notice to Defendants/Appellants that it demanded payment of the loan in full within 30 days, but Shelbourne Healthcare and Guarantors made no such payment before, on, or after October 21, 2023. As such, the trial court determined that M&T Bank presented evidence to support its position that Shelbourne Healthcare had defaulted on its obligations under the terms of the Demand Note such that judgment was properly entered against all Defendants pursuant to the authority contained in the Guaranty. As the record supports the trial court's determination, we find no basis on which to disturb it.

Similarly, Appellants contend the trial court abused its discretion and committed error by applying the incorrect standard and scope of review to their petition to open. As noted *supra*, the trial court shall open the judgment if evidence is produced which in a jury trial would require submission of the issues to a jury. **Neducsin**, 121 A.3d 498, 506 (Pa. Super. 2015).

Here, the trial court indicated to the parties that it was conscientious of the potential need to open judgment and receive full testimony on the matter if it determined that resolution of the petition to open required consideration of matters beyond those contemplated in the underlying contract. To that concern, however, counsel for M&T Bank argued to the court that the confession for judgment derived exclusively from the Demand Note executed by the parties:

> **Trial Court:** I'm concerned about the drastic – self-help - of a confession of judgment, the use of it. It has to be, you know,

there needs to be strict performance to the terms and conditions of, you know, the underlining [*sic*] instrument. And it's been suggested [by Appellants' counsel] that there's some serious departures from that.

. . .

I'm going to be candid with you. I'm inclined to open the judgment and then allow you to proceed, you know, a contract – but, you know, a breach of contract and other means. But I need to feel comfortable that there was a departure, your suggestion, there wasn't. You are suggesting the underlying instrument was strictly adhered to.

**Counsel for M&T Bank:** Yes.

**Trial Court:** Well, I need to hear about that.

**Counsel for M&T Bank:** Well, Your Honor, it's a demand note. The demand note gives the right to the bank –

**Trial Court:** At will.

. . .

**Counsel for M&T Bank:** Yes.

**Trial Court:** At any time.

**Counsel for M&T Bank:** In the Bank's discretion.

**Trial Court:** In no conditions whatsoever.

**Counsel for M&T Bank:** The bank's discretion to call a note based on its own evaluation, the –

**Trial Court:** At any time.

**Counsel for M&T Bank:** Yes, Your Honor. The Defendants have waived – the Defense has waived the idea of a course of viewing. They expressly waived that as a Defense in these documents, Your Honor. It walks right through you [inaudible]. All these Defenses are waived. The

guarantor in each of the guarantor judgments executed confessions. They also, in the loan documents, acknowledged those confessions. They also acknowledged them in disclosures of confession. The Defendants have not pointed to a deviation from the loan – from the note, from the loan documents in this case.

N.T., 7/16/24, at 14-16.

The trial court accepted this Demand Note as dispositive of the matter in its subsequent order and opinion, and in so doing applied an appropriate scope and standard of review. We discern no error with this determination.

Finally, we address Cross-Appellant M&T Bank's argument that the trial court erred in denying its claim for Attorney's fees. The Trial Court explains that it removed M&T Bank's Attorney's fees from its Revised Order because it found neither documentary nor testimonial evidence of requested Attorney's fees presented at the hearing:

> This Court does not find that Attorney's fees are awarded as there [was] no evidence, testimony or documentary, entered in evidence at the July 16, 2024, Hearing, after or prior, as to the amount of Attorney's fees sought. Therefore, this Court determines that at this time, no Attorney's Fees are awarded. . . . Again, this Court heard no testimony at the July 16, 2024, Hearing as to Attorney's fees.

Trial Court Order, 9/24/24, ## 1 and 32.

M&T Bank contends the denial of attorney fees is at odds with several of the Trial Court's enumerated "Findings of Fact" that the calculation and award of Attorney's Fees were matters set by the terms of the parties' Guaranty:

> **2.** "The Guaranty authorizes confession of judgment against [Defendants] for all amounts due under the Guaranty plus continuing interest, costs of the proceeding and an Attorney's

commission of the greater of five (5%) percent of such sums or $10.000.00, plus the cost of any legal proceedings[. . . .]

**31.** As of October 23, 2023, five percent (5%) of all sums due under the Guaranty, which includes the principal and Interest remaining past due and owing from Shelboume, exceeded ten thousand dollars ($10,000).

Trial Court Order, 9/10/24, "Findings of Fact" #2 and #31.

This Court has upheld the inclusion and enforcement of Attorney's fees collection provisions in loan agreements. *RAIT Partnership, L.P. v. E Pointe Properties I, Ltd.*, 957 A.2d 1275, 1279 (Pa. Super. 2008), citing *Dollar Bank v. Northwood Cheese Co.*, 637 A.2d 309, 314 (Pa. Super. 1994) (attorney's fees provision of 15% enforceable where it was "specifically authorized by the warrant of attorney"); *Centric Bank v. Sciore*, 263 A.3d 31, 44 (Pa. Super. 2021) (non-precedential decision)(upholding award of Attorney's fees in contested confession of judgment action where warrant of attorney authorized them).

Here, the warrant of attorney specifically authorized Attorney's fees in the amount of five percent. Further, as to the trial court's conclusion that the Attorney's fees are not commensurate with the amount of time spent by M&T Bank's attorney in this case, we observe M&T Bank's attorney participated in depositions totaling hundreds of pages, filed complaints for confession of judgment, answers, and multiple responses to Appellants' petitions, and advocated M&T Bank's position at the July 16, 2024, evidentiary hearing on the petitions to open/strike, a transcribed proceeding comprising 146 pages

at which the trial court initially challenged M&T Bank's position, as outlined *supra*.

We conclude the trial court erred when it denied M&T Bank an Attorney's commission for failure to submit evidence of the attorney hours and expenses incurred in prosecuting M&T Bank's interests. There was no dispute that the terms of the parties' executed Guaranty authorized a confession of judgment for an Attorney's commission equal to the greater of 5% of the total sums due under the Guaranty or $10,000.00 plus the costs of legal proceedings. Even if the trial court is correct that M&T Bank failed to present testimony or evidence related to actual costs of the legal proceedings, no such evidence was required to calculate the Guaranty-authorized provision of an attorney fee equal to 5% of the $1,698,330.95 total sum due under the Guaranty.

The trial court did not deny M&T Bank was represented by counsel at every phase of this action, nor did it balk at the Guaranty's authorization of confession of judgment for costs of the proceedings and continuing interest, which were no more easily calculated under the terms of the Guaranty than Attorney's fees were. Accordingly, we reverse the trial court's order denying M&T Bank's petition for Attorney's fees and remand for further review of this issue.

Order is Affirmed in all respects other than that pertaining to M&T Bank's attorney's fees, which we remand to the lower court for review in a manner consistent with this decision. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>12/29/2025</u>